Fisher v. Goebel.

ADOLPH FISHER, Defendant in Error, *v.* GERT GOEBEL, Plaintiff in Error.

40 475
77a 213
40 475
102a 127

*Damages—Covenant—Landlord and Tenant.*—In an action of covenant by the lessee against the lessor for failing to build a sufficient wall in accordance with his covenant, the lessee can recover such damages only as are direct and immediate, but not remote, speculative or contingent damages, or such as might have been avoided by his own act. The proper measure of damages would be the cost of repairing or building the wall, and compensation for the use of the premises of which he was deprived while they were undergoing repairs.

*Error to St. Louis Court of Common Pleas.*

Instruction given for plaintiff:

1. If the jury find from the evidence that the defendant neglected and failed to build a suitable and sufficient wall and fence along the south side of the domicil premises as provided in the lease read in evidence, and if the jury further find from the evidence that by reason of the failure of the defendant to build such wall and fence the plaintiff sustained damage and injury, then the plaintiff is entitled to recover in this action.

The court, on its own motion, gave instruction No. 6 to the jury:

6. If the jury find for the plaintiff, the measure of dama-

ges is the difference between what would have been the value of the rent or use of the leased premises in case the defendant had fully kept and performed the covenants in the lease, and what was the value of the rent or use of the same premises in the condition they actually were by reason of the failure of defendant to keep or perform any of said covenants; but the jury cannot allow the plaintiff anything in respect to the value of the use of improvements put upon the premises beyond $800 worth of such improvements.

Instructions given for defendant:

2. The plaintiff admits in his petition that he abandoned the premises the 15th July, 1859; the jury, therefore, in estimating any damages the plaintiff has sustained by the neglect or improper acts of the defendant, cannot consider any benefit or advantage the plaintiff may have derived from the lease if he had continued in possession until the end of the term.

3. The jury cannot, in estimating the plaintiff's damages, take into consideration the cost or value of the improvements made by him on the leased premises beyond $800, nor ought they to consider the fact that the plaintiff abandoned and left the buildings and improvements he had made thereon.

4. If the wall put upon the south side of the leased premises by Goebel fell down not by any fault of the said Goebel, but by reason of negligent conduct of the plaintiff in not protecting it against the water which flowed from the buildings he had erected, then plaintiff cannot recover damages on account of the falling of said wall.

5. The defendant is entitled to recover on his counterclaim the rent secured by the lease remaining unpaid prior to the abandonment of the premises by the plaintiff.

Defendant's instructions refused:

7. The jury are instructed that if they find the defendant has violated any of the covenants contained in the lease, as stated in the petition, it is their duty, in ascertaining the damages, to be governed by the evidence, and they can only allow in their verdict such actual damages as resulted di-

rectly to the plaintiff from the defendant's neglect in relation to the stone wall, or from his conduct in relation to the entrance and buildings erected on Seventh street; for the plaintiff is not entitled to damages for any loss of profits in his business, or for any loss of customers or visiters to his garden.

8. If the jury find from the evidence in the cause that the wall which plaintiff put up on the south side of the leased premises was not a good and sufficient wall, defendant was bound to make it so, and, if said defendant failed to make it so, then it became the duty of the plaintiff, for his own protection, to make said wall good and sufficient; and if the jury find from the evidence that plaintiff might easily have made said wall good and sufficient before any appreciable injury would have been sustained by want of a good and sufficient wall to the grounds or buildings of the leasehold premises, and would not do so, he cannot recover in this action any damages in respect to said wall beyond the cost and expense of making the same good and sufficient. Or if the jury shall find that, notwithstanding prompt and diligent action on the part of plaintiff to make said wall good and sufficient after it fell, some injury to the buildings or grounds of the leasehold premises would have been sustained before plaintiff could have made said wall good and sufficient, then plaintiff cannot recover in this action any damages beyond the amount of such injury to such grounds and buildings, and the cost and expense of making said wall good and sufficient.

9. The jury are instructed that if they find from the evidence in the cause that Fulton street has not been opened, the defendant was not bound to build any wall on the south side of the leased premises, and no damages can be recovered against him in respect to his not building such wall in a proper manner, or not repairing the same.

10. The plaintiff is liable to pay rent from the commencement of the lease until Goebel re-entered, and if the jury find Goebel did not re-enter until the month of September, 1859,

defendant is liable to pay rent for the three months of June, July and August, 1859, and they should so find on the counter-claim, with interest on that amount.

*Glover & Shepley*, for plaintiff in error.

We contend that the rule of damages in the case is illustrated by the old saw, "a stitch in time saves nine"; that it is the cost of the repair, and not the damage resulting from the ultimate consequences of the want of repair, which fixes the limit of the legal injury. In other words, it is the immediate and not the remote consequential effect which the law considers in estimating the damages. The doctrine for which we contend is well stated thus : "In assessing damages, the direct and immediate consequences of the injurious act are to be regarded ; not remote, speculative and contingent consequences which the party injured might easily have avoided by his own act.—Locker v. Damon, 17 Pick. 288 ; Thompson v. Shattuck, 2 Metc. 615 ; Walker v. Swayzee, 3 Abb. P. 136; 2 Ad. & El. (N. S.) 225; Penly et al. v. Watts, 7 Mees. & W. 601; Colby v. Shelton, 2 Barn. & Cres. 278 ; Walker v. Hutton, 10 Mees. & W. 247 ; Short v. Callaway, 11 Ad. & E. 28.

*Krum, Decker & Krum*, for defendant in error.

For every breach of an express contract, the damage to be incurred is the injury suffered ; compensation for the breach is the rule.

The distinction between general covenants of warranty in the sale of land and an express covenant by a landlord to his tenant must be kept in mind. A lease is a chattel ; the premises return to the landlord. The increase in value of a lease during its continuance is the subject of contracts ; it enters into the contemplation of the parties.

Where the landlord is under an express contract to make repairs and he fails, the tenant may make them and hold the landlord for the expense, but he is not obliged to do it; his failure to do it can constitute no exercise for the breach of

the landlord's express contract, nor can the probable cost of the repair be the proper measure of damage. But in this case the wall to be built was outside of the leased premises, and is not a repair on the premises, but an erection necessary to the support and enjoyment of the leasehold.—Ward v. Smith, 11 Price's Exc. 19. This case was approved in Driggs v. Dwight, 17 Wend. 71; in Trull v. Granger, 8 N.Y. 115; in Worcester v. Rowland, 9 Car. & P. 739, and Smith v. Peat, 9 Exc. R. 165.

*A fortiori*, where the landlord is under covenant to put up a wall, on the south side of the premises, which is necessary to its support, the tenant has a right to damages resulting to his term by not having this support.

Defendant's instructions Nos. 7 and 8, which sought to limit the measure of recovery to the cost of a wall, were correctly overruled; and the instruction given by the court of its own motion was sufficiently favorable to the landlord.

If the tenant had remained in possession, it would be no defence to an action for rent that the landlord broke his covenant to build the wall; but the tenant is not liable for any time after he quits if the landlord is in fault—Jackson v. Eddy, 12 Mo. 210.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff had leased from the defendant the premises called the "Flora Garden," situated on the corner of Seventh street and Geyer avenue, in 1855. There was a cut some fifteen or twenty feet deep on Geyer avenue, and the lessor covenanted in the lease that he would build at his own expense a rock wall and fence on that side; and the lessee covenanted to keep the leased property in a state of repair. Some two years after this wall was erected, it fell down by parts by the action of the elements. The defendant was called upon to rebuild it, but before this was done the plaintiff abandoned the premises and surrendered his lease.

The plaintiff proceeds on the assumption that the covenant of the lessor had been broken by the falling down of this wall,

and that it belonged to the lessor and not to himself to re-build it. The case appears to have been tried on this theory, and the principal matters submitted for decision concern the instructions of the court on the measure of damages.

The jury were instructed for the plaintiff upon the basis that the proper measure of damages was the difference be-tween the rent and value of the leasehold premises with a good and permanent wall standing, and their value in the condition in which they were left without such wall.

The defendant's instructions were predicated upon the rule that only the actual damages resulting directly from the defendant's default in relation to the stone wall, to be meas-ured by what it would cost to rebuild the wall, together with any loss that may have been sustained as the direct and im-mediate consequence of the insufficiency of the wall and the breach of the covenant, could be recovered.

The jury found a verdict for the plaintiff for $4,750 dam-ages, and upon a *remittitur* of $2,375 the defendant's motion for a new trial was overruled, and a judgment rendered for the balance.

Under these covenants, it might admit of serious question whether the plaintiff, after he had accepted the wall without remonstrance, and safely occupied the premises for two years, was not bound under the covenant for repairs to rebuild the wall himself, or at least to put and keep it in a state of re-pair, charging the defendant with damages only for the orig-inal deficiency of structure. But it appears to have been left to the jury under the instructions to say whether the covenant for the building of a wall had been complied with, and whether the plaintiff had sustained damage in conse-quence of a breach thereof; and the case will be considered here only on the matter of the damages.

Upon the facts of the case, we think the instruction given for the plaintiff allowed a larger latitude and measure of damages than the justice or the law of the case will warrant, and that the rule given in the defendant's instructions should have been adopted.

In Vivian v. Champion, 2 Ld. Raym. 1125, it was said that the proper measure of damages in a breach of such covenants was what it would cost to put the premises in repair. This rule appears to have been slightly modified in some modern cases on covenants by tenants for repairs, but, as we conceive, not to the extent implied in this instruction for the plaintiff. —Smith v. Real, 9 Excheq. 165; Penley v. Watts, 7 Mees. & W. 601 ; Worcester v. Rowland, 9 Car. & P. 739 ; Walker v. Swayzee, 3 Abb. Pr. 136. It has been said to cover such damages as are direct and immediate, but not remote, speculative or contingent damages, or such as might have been avoided by the other party—Damon v. Loker, 17 Pick. 288. It has been allowed to include such losses in addition to the actual cost of repair as were necessarily sustained during the periods required for making repairs, and some compensation for any loss of the use of the premises whilst they were undergoing repairs—Middlekauf v. Smith, 1 Md. 327. But we find no satisfactory authority for the position that the tenant in such case may wholly neglect to make the necessary repairs himself, allow his leasehold to depreciate in value, or his business to be broken up and abandon his lease, and then claim for his damages the whole loss so incurred. The greater part of such damages as these might have been avoided, and are to be attributed to his own fault; and for that he must be content to bear the loss himself—Thompson v. Shattuck, 2 Metc. 615. As a general rule, we think it may be said that the recovery must be confined to the actual damages, which are the direct, immediate or proximate, and unavoidable consequence of the breach of the covenant—Sedgw. Dam. 195–9.

The evidence shows that this wall might have been rebuilt at a cost of some six or eight hundred dollars, and we are inclined to think that the plaintiff has recovered a larger amount than he was justly entitled to claim, notwithstanding the *remittitur*.

For these reasons the judgment will be reversed and the cause remanded. The other judges concur.