C. H. WHITE, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 23, 1885.

1. RAILROADS—CONTRACT OF SHIPMENT—INTERPRETATION OF—CASE ADJUDGED.—Defendant made with plaintiff a contract for the shipment of cattle, containing this stipulation : "Now, in consideration that the party of the first part will transport for the party of the second part one car of cattle and one car of hogs to the National Stock Yards station, at the rate of thirty-five dollars per car, with privilege of Chicago at forty-five dollars per car load," etc, ; and providing, further, that plaintiff should unload and reload at transfer points ; and St. Louis was the end of defendant's line, and there would be a transfer to some other line at that point, if the stock should be taken to Chicago ; and the fact is admitted that the defendant did not transport the stock further than St. Louis. *Held*, that the contract of shipment meant that plaintiff could ship to St. Louis, and *there* he had the privilege of determining, in a reasonable time, whether he would go on to Chicago ; and upon plaintiff's demand to furnish transportation, within a reasonable time, to Chicago, and the failure of defendant so to furnish it, the plaintiff was entitled to recover.

2. ——— AUTHORITY OF AGENT TO CONTRACT—COURSE OF DEALING BY RECOGNITION OF.—Although the station agent of defendant had no authority to contract for transportation beyond the *terminus* of its own line ; yet when defendant had made other similar contracts prior to this, being represented by said station agent, which contracts had been recognized and carried out by defendant, this was a " course of dealing between plaintiff and defendant's agent, from which the authority of the agent to make the contract might be inferred." Besides, defendant's general freight agent, who has unques-

tioned right to make such contracts, recognized its validity in this case.

3. ———— OBLIGATION TO PERFORM CONTRACT—NOT EXCUSED BY THE EXISTENCE OF A MOB.—"When a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he' might have provided against it by his contract." *Harrison v. R. R.* 74 Mo. 364.

4. PRACTICE—INSTRUCTIONS—TRIAL BY COURT.—As the chief purpose of instructions is to show upon what theory the court tried the case, the same necessity for instructions does not exist as if the case were tried by jury.

APPEAL from Cooper Circuit Court, HON. E. L EDWARDS, Judge.

*Affirmed.*

Statement of case by the court.

This suit was instituted to recover damages sustained by the plaintiff, on account of the breach of a written contract, made by him with the defendant, for the shipment of a lot of cattle. The plaintiff was a cattle trader, and had a number of car loads of stock at Boonville, ready for market. The defendant was operating a railroad from Boonville to St. Louis. In order to induce the plaintiff to ship the cattle over its road, the defendant made a contract with him, by which the defendant agreed and contracted to transport said cattle, for the plaintiff, to the National Stock Yards, at St. Louis, at the rate of thirty-five dollars per car, "with the privilege of Chicago at forty-five dollars per car load."

The contract is upon one of the company's blanks, and contains numerous stipulations. Among others, an agreement that the plaintiff should "load, unload, and *reload* said stock at his own expense, and feed, water, and attend to the same at his own expense and risk, while in the stock yards of the defendant awaiting shipment, and while on the cars, or at feeding, *or at transfer*

*points.*"  The contract was signed by the local agent of
the defendant at Boonville, as well as by the plaintiff.

The plaintiff introduced evidence to show that both
before and subsequent to the making of the contracts in
suit, he had made similar contracts with the same agent,
and that the defendant had recognized them as binding
upon it, and had shipped his stock under them to Chi-
cago.

The stock was received by the defendant, under the
written contracts sued upon, and reached the National
Stock Yards in St. Louis between two and three o'clock
in the afternoon.  It does not appear when the cattle
were unloaded from defendant's cars.  The next morn-
ing, about ten o'clock, the plaintiff concluded that he
would take the stock on to Chicago, and called upon a
Mr. Gould, who attended to the transferring, to ship the
cattle.  Gould declined to do so.  Plaintiff's brother
then went to defendant's general freight agent, about
eleven or twelve o'clock, and told him that plaintiff had
these contracts for the shipment of the cattle to Chicago,
if he elected to have them taken there ; that he had made
the contracts with the agent at Boonville, and that he
wanted to go on.  The general freight agent asked what
a freight agent could do in the presence of such a mob.
Plaintiff's brother answered, that he could not help that ;
that plaintiff had the contracts and wanted to go on, and
the general agent said he could do nothing.

The plaintiff could not get transportation, and was
compelled to keep his stock in St. Louis nine days be-
fore he could ship them.  He was put to expense in
feeding them ; they lost grade, and when he did succeed
in getting transportation, he was compelled to pay a
great deal more than the contract price.

The defendant, in its answer, after a general denial,
set up, by way of special defence, that it had no road
from St. Louis to Chicago, and only undertook to ship
the cattle as agent for the plaintiff, by way of the Chicago
& Alton Railroad, and that plaintiff so understood it ;
that it transported the cattle to St. Louis safely, and

delivered the same to plaintiff's agent, and that the
plaintiff kept them two or three days before making de-
mand for further transportation, and that the plaintiff
*well knew* at the time he requested transportation, that a
mob was preventing the employes of the Chicago & Alton
Railroad from engaging in its service, and asked that the
Chicago & Alton road be made a party defendant.

The new matter was stricken out, on plaintiff's mo-
tion, as irrelevant and immaterial, and because plaintiff's
action was based upon a written contract to transport
plaintiff's cattle to Chicago, if he elected to have them
taken there, and it was wholly immaterial whether de-
fendant's road extended to Chicago or not, or whether it
expected to ship by the Chicago & Alton road; that the
action being upon a written contract, executed by the
defendant, it could not be altered or modified by prior
or contemporaneous parol understandings; and because
said matter constituted no defence.

The court, at plaintiff's instance, declared the law
to be that if defendant's station agent signed the con-
tracts sued upon for it, and that the defendant company
had previously recognized and approved similar contracts,
made with plaintiff, in its behalf, by said agent, and
that while the stock was in St. Louis, the attention of
defendant's general freight agent was called to the con-
tracts made by the station agent, and that he recognized
them as valid and binding upon the company, the de-
fendant was bound by the contracts, notwithstanding
they were for the transportation of stock beyond the ter-
minus of defendant's road.

The second declared that, under the contracts sued
upon, defendant was bound to furnish transportation for
said stock to St. Louis, and, upon plaintiff's demand, to
furnish transportation, within a reasonable time, to Chi-
cago, and if it failed to do so, the plaintiff was entitled
to recover.

The court refused the following instructions offered
by defendant:

"1. The court declares the law to be that the con-

tracts sued on in this case are only contracts to transport the plaintiff's cattle from Boonville to the National Stock Yards, and are not contracts to transport said cattle to the city of Chicago, a point beyond the terminus of defendant's road, but it is merely a guarantee of the through rates of freight named therein, and the plaintiff is not entitled to recover in this case."

"2. The court, sitting as a jury, declares the law of this case to be, that, under the evidence in this case, the plaintiff, if he be entitled to recover at all, can only recover the excess of freight charges per car above forty-five dollars, with interest at the rate of six per cent. per annum from the date of filing the petition in this case, to-wit, the seventeenth day of May, 1881."

"3. The court, sitting as a jury, declares the law of this case to be that there is no evidence tending to show that the station agent, Randolph, had authority to make, on behalf of defendant, the contract set up in the petition, and that the verdict must be for the defendant."

"4. The court, sitting as a jury, declares the law of this case to be, that, under the contract read in evidence, it was the duty of the plaintiff to notify the defendant before or at the time the cattle arrived at the National Stock Yards, that he elected to have said cattle transported from there to the city of Chicago, and there being no evidence that he did so notify the defendant before said cattle were unloaded at said stock yards, the jury will find for the defendant."

The finding of the court was for plaintiff in the sum of $1,500, and defendant appeals.

WILLIAM S. SHIRK and THOMAS G. PORTIS, for the appellant.

I. It was error to sustain motion to strike out all of defendant's answer except the general denial. The part stricken out set up three good defences: (1) That by the terms of the contract sued upon, defendant was only liable as forwarder, and not liable for anything beyond its own line, except to protect the through rate of freight

in said contract named. (2) That defendant delivered the stock to plaintiff at St. Louis, and that he kept it two or three days before he notified defendant that he wanted it shipped to Chicago. (3) That the Chicago railroad company was prevented from running its trains by a mob. *Read v. R. R. Co.*, 60 Mo. 199; *R. R. v. Hallowell*, 65 Ind. 188; *R. R. v. Hagen*, 84 Ill. 36; *Bartlett v. R. R.*, 94 Ind. 281.

II.  It was error to admit the contracts in evidence, because: (1) There was no sufficient evidence of the authority of the local agent to make such contracts. He had no power to contract for the transportation of stock beyond the line of defendant's road, and there was no such prior course of dealing between plaintiff and said agent, afterwards ratified by the company; as will bind it in this instance. *Sewing Machine Co. v. Ry.*, 70 Mo. 672; *Cupples v. Whelan*, 61 Mo. 383. (2) The contracts showed upon their face that defendant was only bound to protect the through rate of freight therein named, and defendant was only liable as forwarder.

III.  This action arose before the passage of the Carriers Act of 1879 (sect. 598, Rev. Stat.), and hence is not affected by that act. Before the passage of that act, there can be no doubt but that a carrier might limit its liability by a contract like that sued upon. Lawson on Common Carriers, sect. 296, and cases cited; *Coates v. Ex. Co.*, 45 Mo. 238; *Holliday v. R. R.*, 74 Mo. 159.

IV.  The court erred in giving plaintiff's instructions and in refusing defendant's, and also in overruling defendant's demurrer to the evidence. There is no evidence that plaintiff complied with his part of the contract, even by paying the increased amount of freight to Chicago. Performance must not only be averred, but must also be proved, and this was not done.

V.  It was the duty of plaintiff to notify defendant *before the stock was unloaded*, that he elected to have them transported to Chicago. If he did not do this, defendant had the right to conclude that plaintiff had

elected to go no further, and that it had complied with its contract.

D. W. SHACKLEFORD and DRAFFEN & WILLIAMS, for the respondent.

I. The suit is upon a special contract, and it was immaterial whether defendant's road extended beyond St. Louis or not. It had the power to contract for transportation beyond its own *terminus*. *Quimby v. Vanderbilt*, 17 N. Y. 306; Hutch. on Carriers, sect. 145; *Loomis v. Wabash, etc., R. R.*, 17 Mo. App. 340.

II. The contract could not be varied by the "understanding" of the parties, not expressed in the written contract, and that part of the answer was properly stricken out. *Jones v. Shaw*, 67 Mo. 667.

III. The allegation that plaintiff received the stock at St. Louis and did not demand transportation for two or three days thereafter was unnecessary. It could have been proved under the general denial. The defendant was not injured by the ruling of the trial court.

IV. The fact that the employes of the Chicago & Alton railroad were prevented by violence from engaging in the service of that company constituted no defence. (1) The suit was not against defendant upon its liability as a common carrier. It was based upon a special contract. "Where a party by his own contract creates a duty, he is bound to make it good, notwithstanding any accident or inevitable necessity, because he might have provided against it by his contract." *Harrison v. R. R.*, 74 Mo. 364; *Shouse v. Neiswaanger*, 18 Mo. App. 237; *Davis, Adm'r, v. Smith*, 15 Mo. 467. (2) The contract did *not* provide that the shipment should be by the Chicago & Alton railroad. Defendant was not confined to that road in furnishing transportation. It is not alleged that defendant could not furnish transportation by other routes. (3) The new matter is not well pleaded. It is inconsistent to deny a contract and then confess and avoid it. Only the *facts*, well pleaded, are admitted.

V. The authority of the local agent to make the

contract sufficiently appears. He made similar ones before and after this, which were recognized as binding by defendant. The general freight agent also ratified and approved them. *Sewing Machine Co. v. R. R.*, 70 Mo. 672.

VI. In construing contracts, the object is to ascertain the meaning of the parties. There can be no difference as to the meaning of this. The measure of damages is the actual loss sustained by plaintiff. The court ruled rightly as to contract and damages. *Bent v. Alexander*, 15 Mo. App. 181 ; *Harrison v. R. R.*, 74 Mo. 364.

ELLISON, J.—The shipping contract in evidence contained the following stipulation : " Now in consideration that the party of the first part will transport for the party of the second part, one car of cattle and one car of hogs to the National Stock Yards station, at the rate of thirty-five dollars per car, with privilege of Chicago at forty-five dollars per car load," etc.

The contract further provided that plaintiff should unload and reload at transfer points. St. Louis was the end of defendant's line, and there would be a transfer from defendant's line to some other at that point, if the stock should be taken to Chicago.

The fact is not disputed that defendant did not transport the stock further than St. Louis.

There is no doubt in my mind that the contract of shipment meant that plaintiff could ship to St. Louis, and there he had the privilege of determining, in a reasonable time, whether he would go on to Chicago. Reflection on the nature and object of the contract will demonstrate this to be its true interpretation. Defendant is a public carrier of freight, soliciting patronage from the stock men along its line. It is a matter of which the court may take judicial notice, that St. Louis and Chicago are great marts of trade, and cities in which are to be found, two leading western markets for stock. *Gibson v. Stevens*, 8 How. 398 ; 1 Greenl. Ev. sect. 6, and notes. It is common knowledge that there are occasions

when shippers would prefer the St. Louis market to the Chicago market, and *vice versa*. Plaintiff being a stock dealer and shipper would naturally be attracted to defendant's road by the privilege offered him by defendant, of the opportunity of testing one of these markets, and if found unsatisfactory, of transporting his stock to the other. If going to St. Louis in the first instance was to be of no advantage to plaintiff—if he was not to be given an opportunity of deciding at St. Louis, whether he preferred that city or Chicago, where would there be any reason for inserting the clause, " with privilege of Chicago," in the contract? If he were compelled to determine which city he preferred before he left Boonville, there was no necessity of an alternative in the contract, as he could insert the place determined upon at the time of signing. There can be no question that his determination or election was to be made at St. Louis. He was to determine there which market of the two cities he preferred. How could he determine this, except by a test of the market? He arrives at St. Louis with the privilege of going on to Chicago, if he does not like the market in the former place. How is he to ascertain that the market does not suit him except by a test? Manifestly, if he was not permitted to have an opportunity to test the St. Louis market, the "privilege" would be no privilege, for what privilege would it be to plaintiff sitting in a caboose, and there electing to exercise the privilege of passing through St. Louis to Chicago.

But it was asked in argument whether defendant was to be held to the obligation of transporting stock to Chicago at any time within a week, a month, or six months, after their arrival in St. Louis. In that regard this contract would be looked upon as the law does upon many others; plaintiff must exercise his privilege or make his election in a reasonable time, having in view the nature and object of the contract.

In this case it appears plaintiff arrived in St. Louis between three and four o'clock one afternoon, and by ten o'clock next morning he was demanding that his priv-

ilege of Chicago be accorded him. The attention of the court was called to the fact that defendant was only bound to transport to Chicago in a reasonable time, after the arrival in St. Louis, by plaintiff's second instruction, and its finding for plaintiff is evidence that the court thought the privilege exercised in a reasonable time.

There is another consideration highly favorable to this view and interpretation of this contract. The uncontradicted evidence is that when defendant's general freight agent was informed of plaintiff's election, and called upon to carry out this contract by furnishing transportation to Chicago, he made no objection to the contract nor to the time of his being notified of plaintiff's election. He made no objection at all, and only stated that they could do nothing on account of a mob in St. Louis. This statement of why he could not comply with it may well be taken as a recognition. This suit being on a special contract, the existence of a mob in St. Louis would not relieve the defendant from the burden of his contract. In the case of *Harrison v. Ry. Co.* (74 Mo. 364), it is said, "that when a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." To this same effect is Hutchinson on Carriers, sect. 317; Angell on Carriers, sect. 294.

Defendant makes the further point that its station agent at Boonville had no authority to contract for transportation beyond the terminus of its own line. This, taken by itself, is true, but here the evidence shows that the parties to this action had made other similar contracts prior to this, the defendant being represented by the station agent at Boonville, which contracts had been recognized and carried out by defendant; this was a "course of dealing between plaintiff's and defendant's agent, * * * from which the authority of the agent to make the contract might be inferred." Besides, defendant's general freight agent, who has unquestioned right to make such contracts, recognized its validity in

this case.  The cases of *Grover & Baker Sewing Machine
Co. v. Ry. Co.* (70 Mo. 672), and *Loomis v. Ry. Co.* (17
Mo. App. 340), recognize what is said here.

The contract of shipment likewise contained an exemp-
tion from liability on the part of defendant for any loss
or damage occurring beyond the limits of defendant's
railway, and defendant claims this exempts it from all
obligation except to protect plaintiff as to the contract
price for the freight.  We do not understand the action
to be for a loss occurring beyond defendant's line.  It is
an action on the contract ; the breach being a failure to
transport to Chicago, as therein agreed.  In this case
there was no opportunity for a loss to occur beyond de-
fendant's own line, for the simple reason, it refused to
transport beyond.

That part of defendant's answer stricken out by the
court was no defence to the action.  That the plaintiff
knew defendant did not have a line extending from St.
Louis to Chicago was certainly no reason why it may not
have contracted to transport the stock to Chicago.  The
allegation that plaintiff knew that defendant only under-
took to transport by way of the Chicago & Alton
railway could not have been proven under the written
contract between the parties declared on.  *Jones v.
Shaw*, 67 Mo. 667, and authorities cited.

If it should be conceded that that portion of the an-
swer in relation to the delivery of the stock to plaintiff's
agents at St. Louis, where it is alleged to have remained
for two or three days before demand was made to ship it
to Chicago, was improperly stricken out, yet no harm
has resulted to defendant, for the issue was tried as to
whether plaintiff made the demand within a reasonable
time ; this is shown by the evidence and instruction of
the court.  No objection was made to this issue being
made under the general denial.  Though defendant offers
no testimony, yet his cross-examination of plaintiff's
witnesses shows this matter to have been investigated.
The allegation that the Chicago & Alton Railway Com-
pany had been forced by an armed mob to cease business

was a matter that did not concern plaintiff or his cause of action; he had a contract in which the contingency of mobs was not provided against, and in which the Chicago & Alton Railway Company did not figure. *Harrison v. Ry. Co., supra.*

The measure of damage was properly declared by the court.

This case was tried by the court and the chief necessity or purpose of instructions is merely to show upon what theory the court tried the cause, and the same necessity for instructions does not exist as if the case were tried by jury. The defendant, in a jury trial, would perhaps have been entitled to an instruction submitting the question, whether plaintiff had made his election to remain in St. Louis, before he made his demand to go to Chicago. Of course, if he once elected to waive his privilege of Chicago, he could not afterwards insist on being taken there. But the instruction defendant asks on that subject is properly refused, for it declares plaintiff was bound to elect, before or at the time of his arrival at St. Louis, thus preventing him from having a reasonable time.

Perceiving no error justifying a reversal, we affirm the judgment. All concur.