JOHN F. MILLER, Defendant in Error, v. THE CHICAGO & ALTON RAILROAD COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, May 6, 1895.

1. **Pleading:** EVASIVE: STRIKING OUT. An answer neither admitting nor denying the making of the contract set up in the petition, is evasive and may be stricken out.

2. **Common Carriers:** CONTRACT: DEFENSE. A carrier of live stock verbally agreed to furnish a shipper cars at a certain place on a certain day to ship a certain number of fat cattle. *Held*, that an answer pleading that a storm and blockade prevented compliance with the contract was properly stricken out, as the contract contained no stipulations against such matters.

3. ———: VERBAL CONTRACT: WRITTEN CONTRACT: NOTICE: DEFENSE. Where a carrier verbally agrees to furnish cars at a certain time and place and ship stock therein, he can not defend under a written contract entered into subsequent to the breach of the verbal contract, which written contract contains no release from the prior breach nor waiver thereof. Nor, in such case, is the failure of the shipper to comply with the written condition of the contract, requiring notice within five days after loss, available as a defense.

4. ———: CONTRACT: EVIDENCE: SUBSEQUENT WRITTEN CONTRACT. Whether the contract alleged was made, is a question of fact and there was sufficient proof to carry the case to the jury. This case is distinguished from *Leonard v. Railroad*, 54 Mo. 293, as to the effect of the subsequent written contract upon the prior verbal contract.

5. ———: ———: POWER OF STATION AGENT. A station agent empowered to receive and forward freight making a contract within the scope of his apparent authority binds his company, although he exceed his authority, until it shows that the other party to the contract had knowledge of the agent acting beyond his authority.

6. ———: ———: ———. On the facts in this case, defendant's station agent had the power to contract for the delivery of cars at another station for the purpose of receiving a shipper's stock as well as the power to contract for the receipt and shipment of cattle at a specified time.

7. **Instructions:** COVERING SAME GROUND. Where the ground covered by refused instructions is substantially covered by others given, it is sufficient.

8. **Common Carriers:** CONTRACT: COMMON LAW LIABILITY: INSTRUCTIONS. Instructions applicable in an action based on a carrier's common law liability are not applicable when the action is based on an express contract for shipment at a specified time.

*Appeal from the Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*William Walker* and *Silverman & Weil* for plaintiff in error.

(1) There was no verbal contract. In fact, no agent of defendant had authority to make a verbal contract to ship at a certain time. Plaintiff knew this. Hutchinson on Carrier, sec. 328; *Bryan v. Railroad*, 28 S. W. Rep. 98. (2) If, as alleged, there was a verbal contract, then Miller agreed to cancel or merge it, by entering into a written contract, upon the same subject-matter. *Plumb v. Cooper*, 121 Mo. 668; *Leonard v. Railroad*, 54 Mo. App. 293, and cases cited; *O'Brien v. Kinney*, 74 Mo. 125, and cases cited in the briefs and discussions therein. Hutchinson on Carriers [Last Ed.], secs. 126-128; 1 Wait's Actions and Defenses, 131. (3) The cattle were shipped under a written contract. No notice of injury was given within five days as provided by said written contract—this bars claim for alleged shrinkage. See *Leonard case, supra; Dawson v. Railroad*, 76 Mo. 300. (4) Miller attempted to enter into a contract to ship on Monday, at Odessa. The agent,

Mr. King, refused to make any contract Monday on account of the "act of God"—the snowstorm—no contract was made to ship that day. *Barnett v. Railroad*, 27 S. W. Rep. 676; *Pruitt v. Railroad*, 62 Mo. 527; 3 Am. and Eng. Encyclopedia of Law, 16. If a common carrier has a reasonable excuse, he can refuse to receive and ship live stock. *Ballentine v. Railroad*, 40 Mo. 491; 3 Am. and Eng. Encyclopedia of Law, 10.

*Wallace & Chiles* and *J. A. Kemper* for defendant in error.

(1) Plaintiff in error says there was no verbal contract. This is a question of fact to be determined by the jury, and which they have determined by their verdict in favor of defendant in error. The authority of the agent to make such a contract has been decided frequently by our courts. *Harrison v. Railroad*, 74 Mo. 374, and cases cited. (2) The subsequent written contract to ship did not affect the previous verbal contract for the cars. *Harrison v. Railroad, supra; McCullough v. Railroad*, 34 Mo. App. 23; *Harkness v. Briscoe*, 47 Mo. App. 196; *Leonard v. Railroad,* 54 Mo. App. 293. (3) This is not an action on the written contract of affreightment, but on the verbal contract made prior thereto. See authorities cited in (1) and (2). (4) Miller made no attempt to enter into a contract with King on Monday at Odessa. The contract had been made with the railroad company prior thereto through its agent at Bates City, and ratified by the train master at Slater, who directed King to furnish the cars, which he did and they were put in charge of Miller and bedded for his stock. (5) This is not a case of a common carrier refusing to make a contract and receive and ship stock on account of a

storm or other reasonable excuse as in the *Ballentine case* (40 Mo. 491), but an action upon a contract to furnish cars and ship, in which there was no reservation made and in which impossibility to perform is no defense. *Harrison v. Railroad, supra,* and cases cited; *White v. Railroad,* 19 Mo. App. 398; *Fulkerson v. Eads,* 19 Mo. App. 620; *Beatie v. Coal Co.,* 56 Mo. App. 221, *loc. cit.* 230; *Brinkerhoff v. Elliot,* 43 Mo. App. 185.

SMITH, P. J.—This is an action to recover damages arising out of the breach of a verbal contract.

The petition alleged that on the tenth day of February, 1894, the plaintiff entered into a verbal contract with the defendant, whereby the defendant bound itself to furnish the necessary cars and to receive and ship eighty head of fat cattle belonging to the plaintiff, at Odessa, to the stock yards at Kansas City, in this state, on the twelfth day of February, 1894, and that, in compliance with said contract, the defendant brought to said station at Odessa, and had then and there, four stock cars, for the shipment of the plaintiff's said cattle, and the plaintiff drove his said cattle to said station, and had them there during the entire day, ready for shipment, but defendant, in violation of its said contract, refused to receive and ship said cattle on said twelfth day of February, 1894, and did not receive and ship said cattle until February 13, 1894; that, had defendant received and shipped said cattle as it had bound itself to do by said contract, said cattle would have reached the Kansas City stock yards, in the regular course of transportation, on the morning of February 13, 1894; but in consequence of defendant's failure to comply with its contract, the said cattle did not arrive at Kansas City stock yards until February 14, 1894; that said cattle, on the thirteenth day of February,

1894, would have weighed ninety-four thousand, three hundred and seventy pounds, and were then worth, in the Kansas City market, $3.35 per hundred pounds, and were only worth on the fourteenth day of February, $3.10 per hundred pounds, etc.

The answer was a general denial, coupled with, *first*, a special defense, that: "On the twelfth day of February, 1894, the said plaintiff attempted to enter into an agreement with the said defendant for the shipment and transportation of sixty head of cattle from the city of Odessa to said city of Kansas City; that the said defendant, on the twelfth day of February, 1894, at said city of Odessa, refused to enter into such an agreement as aforesaid, to wit, to ship and transport the said sixty head of cattle from the said city of Odessa to the said city of Kansas City, on the said twelfth day of February, 1894, refused to receive said cattle for shipment and transportation on said date for the reason that the said cattle could not be shipped nor transported as aforesaid on the said twelfth day of February, 1894, in consequence of a sudden and extreme change in the weather, and the falling of a deep and heavy snow, and a severe, extreme and unforeseen storm arising, whereby the railroad freight lines and system of said defendant for the reception, shipment and transportation of the said live stock were blockaded and incapacitated from performing their usual, customary and scheduled traffic on the said twelfth day of February, 1894, and the defendant further states that by reason and in consequence of the sudden and extreme change in the weather, and the falling of a deep and heavy snow, and a severe and extreme storm arising, it was impossible as aforesaid, to receive, ship, or transport said live stock on said date; and impossible to move and transport the cars and trains of the said defendant on the said twelfth day of February, 1894;"

and, *second*, that the plaintiff delivered said cattle to it on the thirteenth day of February, 1894, for shipment and entered into a written contract with defendant, whereby said cattle were carried by it from Odessa to the Kansas City stock yards; and that said cattle were shipped in accordance with the following express conditions: "The second party (the said plaintiff) further agrees that from the time when the train containing the stock actually starts from the place of shipment the scheduled time of freight trains on the time card of the said first party (the defendant) in force at this date with twelve hours added thereto and not including time lost by stops for feed, water, rest, or for proper or humane care of any live stock carried in the same train, is a reasonable time for the transportation of the said stock under this contract, and if the stock shall be transported within that time, the second party (the said plaintiff) agrees not to make any claim for damages from delay in transit, and that the first party (the defendant) shall not be liable therefor.

"It is further mutually agreed that, should loss or damage of any kind occur to the property specified in this contract, while such property is in the possession of the first party (said defendant), the second party (said plaintiff) shall, in five days after such loss or damage has accrued, give notice in writing of his claim to the first party (said defendant)."

The court, on the motion of plaintiff, struck out all of the defendant's answer, except the general denial. There was a trial and judgment for plaintiff, and from the latter the defendant appealed.

No error is perceived in the action of the court in striking out the special defenses pleaded in the answer. The first of these neither expressly admitted nor denied the making of the verbal contract alleged in the petition. It was uncandid and evasive. It, in legal

effect, denies the contract, and then alleges facts which are in avoidance. If it had unequivocally admitted the contract and then pleaded the facts it does, it would still plead no valid defense. The facts specially pleaded afford no excuse or justification for noncompliance with the terms of the contract pleaded. There was no qualification or limitation of the contract. By the terms of the contract alleged, it was the absolute legal right of the plaintiff to have his cattle received and shipped on February 12, 1894.

In *Davis v. Smith*, 15 Mo. 467, it was declared: "The distinction between a duty created by law and one created by the party is an established principle of our law. When the law creates a duty and the party is disabled to perform it, without any default by him, and he has no remedy over, the law will excuse him. But when a party, by his own contract, creates a charge or duty upon himself, he is bound to make it good, if he may, notwithstanding any account by inevitable necessity, because he might have provided against it by his contract." This principle has been recognized and applied by us. *White v. Railroad*, 19 Mo. App. 400; *Fulkerson v. Eads*, 19 Mo. App. 620; *Hall v. School District*, 24 Mo. App. 213.

Angell on Carriers, section 294, in speaking of contracts, express as to a time prescribed in which a thing is to be done, says: "But the principle of law in respect to the obligations of a carrier to deliver goods in a reasonable time, depending upon circumstances, though they may apply, as in the foregoing cases, to implied contracts, will not apply to express contracts to deliver in a prescribed time. In the latter case, no temporary obstruction or even absolute impossibility of complying with the engagement, will be a defense to an action for failure to perform the contract." And this paragraph

was quoted with approval by the supreme court of this state in *Harrison v. Railroad*, 74 Mo. 364.

In *Harmony v. Bingham*, 2 Kernan (N. Y.) 99, it was held that when a party agreed to transport goods from one point to another within twenty-six days and failed to do so in that time, "the fact that a public canal, on which the goods were intended to be transported a part of the distance, was rendered impassable by an unusual freshet and that this occasioned the detention, was not a legal excuse therefor." This statement of the law was quoted with approval in *Harrison v. Railroad, supra*.

From these principles and authorities, it is plain that the facts specially pleaded in the first part of the defendant's answer constitute no defense to the action.

The second and third special defenses of the answer show that the written contract pleaded was entered into after the alleged breach of the verbal contract, occasioning the damages for which plaintiff sues, had occurred, and it is not alleged that there is any provision of said written contract which releases the defendant from its liability arising from the breach of the verbal contract, or anything in the former that indicates such to have been the intention. Nor is any provision pleaded showing that the plaintiff waived any right which had already accrued, or that the written contract merged the defendant's liability for the breach of the previous verbal contract. *Harrison v. Railroad, supra*; *Railroad v. Perkins*, 17 Mich. 296; *Harkness v. Briscoe*, 47 Mo. App. 196; *McCullough v. Railroad*, 34 Mo. App. 23. Nor can we discover from any provision of the written contract pleaded, that a performance of its conditions by the defendant in any way excused the nonperformance of the previous verbal contract. The special defenses of the answer, we think, were properly stricken out.

Defendant further complains that the court erred in refusing its instruction in the nature of a demurrer to the evidence. Among the grounds of this complaint is the suggestion that the plaintiff did not prove the verbal contract which is alleged in the petition. Whether this was so or not was an issue of fact, which was properly submitted to the jury, under the evidence and instructions. And in this connection it may be as well stated that the objection that there was no sufficient proof of the verbal contract sued on to carry the case to the jury can not be sustained. The plaintiff testified to the making of the contract, and he is, in the main, corroborated by Frick, the Bates City station agent. King, the Odessa station agent, testified that he was directed by the defendant's train master at Slater to furnish the cars. The defendant not only recognized, but partially performed, the contract, so that it will not do to say there was no evidence of such contract to go to the jury. Nor are the facts and circumstances attending the execution of the written contract in the present case analogous to those in *Leonard v. Railroad*, 54 Mo. App. 293. Here, there was a breach of the verbal contract before the written contract was entered into; while there, there was no breach of the verbal contract, but of the subsequent and superseding written one, so that case is distinguished from this. As to *Pruitt v. Railroad*, 62 Mo. 527, relied on by defendant, it is sufficient to say, by reference to the third instruction given in the case for the plaintiff and the comment thereon by the judge who wrote the opinion, that there is nothing there decided that is not in harmony with the views herein expressed, or not in accord with *Harrison v. Railroad*.

The defendant, as a further ground of demurrer, contends that it was beyond the power of the agent at Bates City to make the verbal contract for furnishing

cars at Odessa station and the receipt and shipment of plaintiff's cattle from that station. It is the well settled law, that a station agent, clothed with the power, and whose duty it is, to receive and forward freight, who makes a contract within the scope of his apparent authority, thereby binds the company he represents, although he may have exceeded his authority; and when such company seeks to absolve itself from liability arising under such contract, on the ground that the agent, although apparently authorized to make it, in fact, had no such authority, it must show that the party with whom the contract was made had knowledge of the fact that the agent was acting beyond his authority. *Pruitt v. Railroad*, 62 Mo. 540; *Harrison v. Railroad, supra,* and authorities there cited.

It must be conceded that the defendant's station agent at Bates City had authority to bind the defendant to furnish cars to plaintiff at Odessa station. The defendant's train master, who undoubtedly was its *alter ego*, in respect to the control of all its trains and cars, that were, from time to time, required to move any live stock or other freight offered for shipment over its line at any station between Kansas City and Slater, fully acknowledged the authority of the station agent at Bates City to contract for furnishing cars at the neighboring station of Odessa. The agent at Bates City testified that he made a requisition on the train-master to furnish the cars at the time and place he had promised the plaintiff, and it is not disputed that the same was so furnished by the latter in compliance with the requisition of the former.

Assuming, as we must, that the Bates City agent had the power to contract for furnishing the plaintiff the required number of cars for the shipment of his cattle at Odessa, the question is, did he have further power to contract for the receipt and shipment of the

cattle at a specified time? We see no reason why, from the power of an agent at one station to furnish a shipper cars at another station, the shipper may not presume the existence, in the agent, of the further power to stipulate to receive and ship his stock at a specified time. *State v. Bank*, 45 Mo. *loc. cit.* 539.

It is difficult to see how the business of a railroad could be successfully conducted, in regard to live stock, unless the owners have a right to rely on the agreements of station agents, both as to the furnishing of cars and the time for the receipt and shipment of the stock. The fact that an agent possesses the former, but not the latter, of these powers, can not affect a shipper, unless notice is conveyed to him in such a manner as authorizes the inference that he was apprised of the restrictions. We must think that the contract proved in this case was clearly within the scope of the agent's apparent authority and that it was sufficient to bind the defendant. If his authority was restricted by the defendant, alone to the furnishing of cars to the shippers, there is no fact shown to justify the inference that plaintiff had knowledge of the restriction.

The demurrer to the evidence was properly overruled.

The ground covered by the ninth and eleventh instructions, which were refused for defendant, is substantially covered by the first given for plaintiff and the second for defendant.

No error is perceived in the action of the court in refusing defendant's sixth, seventh and eighth instructions. These instructions are all based upon the erroneous notion that the "act of God" preventing a compliance with the contract to receive and ship plaintiff's cattle, constituted a valid excuse therefor. If the action had been based upon the carrier's common law liability, instead of an express contract, the instructions

would have been proper. This is apparent from the authorities to which we have already called attention.

We have examined the other instructions asked by defendant, but find no error in the action of the court in refusing them. The case seems to have been tried in conformity to correct principles of law, so that we are not at liberty to disturb the judgment, which will be accordingly affirmed. All concur.