JOSEPH B. SHELBY, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, December 5, 1898.**

1. **Common Carriers**: AGENT: OBSTRUCTION: DEFENSE. If a carrier agrees to forward goods to their destination and deliver them within a given time, he is held to a strict performance and no obstruction or even impossibility will be a defense against a nonperformance, since he might have provided against such in his contract; the case is otherwise where there is no express contract.

2. ———: EVIDENCE: DEMURRER. A demurrer to the evidence in this case was rightfully refused.

3. ———: FAILURE TO CARRY IN TIME: MEASURE OF DAMAGES: DUTY TO MITIGATE. A plaintiff injured by breach of contract should use reasonable exertion to render the damages as light as possible, and labor and expense in so doing is chargeable against the defendant, and the action of the court in giving and refusing instructions set out in the opinion is approved.

*Appeal from the Lafayette Circuit Court.* — HON. RICHARD FIELD, Judge.

AFFIRMED.

WM. S. SHIRK for appellant.

(1) It was error to strike out that part of defendant's answer, setting up the existence of a mob in the Kansas City yards, by reason of which defendant could not get its cars handled through said yards, as an excuse for refusing to receive said cattle for shipment. The law is clear that under such circumstances the

carrier is excused from receiving stock for shipment. For the same reason it was error to refuse defendant's second instruction. Hutchinson on Carriers, secs. 114 and 115; Falkner v. Railway, 51 Mo. 311; Railway v. Johnson, 45 Am. and Eng. R'y Cases, 338 and note on 339; Reed v. Railway, 60 Mo. 199, 208. (2) The court also erred in refusing to give defendant's instruction in the nature of a demurrer to all the evidence at the close of the whole case. (3) It was error to refuse to give defendant's fourth instruction. Ward's Line v. Elkins, 34 Mich. 439, and authorities there cited. (4) It was gross error to give plaintiff's third instruction. The measure of damages therein stated is radically wrong. Nor is there any evidence whereon to base said instruction. This case is entirely different from the case of Wilson & Aull v. Railway, 66 Mo. App. 388; Ward's Line v. Elkins, 34 Mich. 439; 3 Sutherland on Damages, secs. 899–902; Hutchinson on Carriers [2 Ed.], sec. 774; People ex rel. v. Railway, 22 Hun. (N. Y.) 533; Birney v. Railway, 20 Mo. App. 471; Gelvin v. Railway, 21 Mo. App. 273.

ALEXANDER GRAVES for respondent.

(1) There was no error committed in striking out portion of the answer as complained of. Harrison v. Railway, 74 Mo. 367, 370, 372, and cases cited; Hutchinson on Carriers [2 Ed.], sec. 317; Miller v. Railroad, 62 Mo. App. 255; 4 Elliott on Railroads, sec. 1460. That portion stricken out was repugnant to the first part of the answer which was a general denial of the plaintiff's entire cause of action including the contract, the part stricken out being a confession and avoidance of the same. Miller v. Railroad, 62 Mo. App. 255. (2) Appellant's point 4 is that its fourth instruction was refused, and its point 5 is that the respondent's

third instruction was given. Wilson & Aull v. Railway, 66 Mo. App. 394, 597; Gelvin v. Railway, 21 Mo. App. 273; Harrison v. Railway, 88 Mo. 630; Sutherland on Damages [2 Ed.], sec. 88, and cases there cited in abundance. Golden v. Clinton, 54 Mo. App. 100; Lidell v. Fisher, 48 Mo. App. 449.

SMITH, P. J.—This is an action to recover damages for the breach of a verbal contract, by which the defendant unconditionally undertook to receive and ship ten car loads of cattle on the evening of July 9, 1894, from its station at Lexington to Kansas City.

The answer contained the following allegations, that is to say:

"Defendant admits that it refused to accept said cattle for shipment on said ninth day of July, 1894, and avers that it had just and good ground for so doing, inasmuch as on that day, and for several days previous, and for several days thereafter, the switchmen in the Kansas City railway yards, not the employees of this defendant, had gone out on a strike and refused to perform their usual duties, and suddenly ANSWER. and violently refused to allow other switchmen to take their places or perform their labor, and became a riotous mob, insomuch that United States marshals had to be placed in said yards to protect and switch and handle United States mail cars; and defendant avers that said strike was not occasioned by any grievance which said switchmen had against the Missouri Pacific Railway Company, but was wholly a strike in sympathy with the Chicago Pullman strikers; that on account of said strike, stock cars could not be handled through said yards to their destination at the stock yards, and that defendant refused to receive said stock for shipment for that reason.

"And for further answer the defendant avers that

by the eleventh day of July, 1894, said strike was so far ended that it was ready to receive and ship the plaintiff's said stock, which the plaintiff well knew, but that, nevertheless, he never again presented or offered said stock for shipment from Lexington to Kansas City, but kept the same in his own possession for about three weeks thereafter, and did not, during all that time, again offer the defendant said cattle for shipment; but that, on the thirtieth day of July, 1894, he did present said cattle for shipment from the station of Northrup to Kansas City; that on said thirtieth day of July, 1894, the defendant promptly received said cattle for shipment and speedily forwarded them to their destination.''

There was a general denial coupled with other allegations identical with those contained in the answer in Wilson & Aull case reported in 66 Mo. App. 388.

The court, on motion of the plaintiff, struck out the above quoted paragraphs of the defendant's answer for the reason that the same constituted no defense to the action. And the question now is as to the propriety of its action in that regard. The law is now well settled in this state to the effect that if the carrier had agreed to carry goods to their destination and then deliver them within a prescribed time he will be held to a strict performance of his contract and no temporary obstruction or even absolute impossibility will be a defense for failure to comply with the engagement; for, when a party, by his own contract, creates a duty which he engages to perform, he is bound to make it good, notwithstanding an accident or delay by inevitable necessity, because he might have provided against it by his contract.'' Harrison v. Railway, 74 Mo. 364; Davis v. Smith, 15 Mo. 467; Miller v. Railway, 62 Mo. App.

COMMON carriers: agent: obstruction: defense.

252. Gann v. Railway (decided by us, but not yet reported).

In Elliott on Railroads, section 1460, it is stated that: "The authorities require the conclusion that where there is an express contract, wherein the carrier undertakes, without limitation or qualification, to safely carry and deliver within a time definitely fixed by the contract, the fact that a mob prevents the carrier from performing the contract will not exonerate it from liability for loss of the goods. The theory of the decisions is that the carrier, if it desires to avail itself of the acts of mobs as a ground of defense, must so stipulate in the contract under which it undertakes to carry the property."

A distinction is made between cases where there is an express contract to carry and deliver within a prescribed time and cases where there is no such express contract. In the former no temporary obstruction or even absolute impossibility of complying with the engagement will be a defense to an action for failure to perform the contract. Miller v. Railway, *supra;* Angell on Carriers, sec. 294; Elliott on Railways, *supra;* Read v. Railway, 60 Mo. 199, cited and relied on by defendant, was of the latter class. In that case there was no absolute and unconditional contract to deliver the property at the point of destination within a specified time, as here, and hence it is inapplicable. We have examined such of the other cases cited by defendant as are accessible to us, but have not found any of them in point. In none of these cases was there any express stipulation contained in the contract as to the time in which the shipment was to be transported to destination. The contract for carriage in all of them was that by which the carrier bound itself to safely carry and deliver the shipment within a reasonable

time.   It is, therefore, manifest that these cases have not the slightest analogy to the present.   As has been seen, this action is for the breach of an absolute, unconditional agreement to deliver the plaintiff's cattle at a specified time and place, and, therefore, according to the principles to which we have already adverted, the matters set forth in that part of the defendant's answer which was stricken out constituted no defense to plaintiff's action.

The defendant objects that the trial court erred in refusing its instruction in the nature of a demurrer to the evidence.   It is indubitably shown by the uncontroverted evidence, if not impliedly admitted by the pleadings, that the defendant entered into an agreement to receive the plaintiff's cattle at Lexington station on the evening of the ninth of July, 1894, and to deliver them at the Kansas City Stock Yards on the next morning in time to be on the market of that day.   It is conceded that the defendant failed to comply with its agreement and as an excuse therefor it was pleaded that compliance was made impossible by the threats of violence of certain persons employed in the Kansas City Stock Yards over which it had no control, but which excuse we have already declared can not be invoked as a defense. Since there was a breach of the agreement and no sufficient excuse or justification pleaded and proved it must follow as an inevitable consequence that some damage resulted.   In the absence of proof of the actual amount of damages the judgment of course could only be for the minimum amount—nominal damages. 1 Sutherland on Damages, sec. 2.   So it appears that there was not an entire failure of proof, and therefore the defendant's demurrer was properly refused.

The defendant further objects that the trial court erred in its action giving an instruction for the plaintiff

numbered 3, which declared in substance that in assessing the damages the jury should take into consideration the amount of the shrinkage in the cattle by reason of having been driven from the place where they were feeding to Lexington station, and then back, and that such shrinkage should be calculated at the market price in the Kansas City Stock Yards on the tenth day of July, and, further, that they should take into consideration the difference in the market price on said tenth day of July and on the thirty-first day of July and the extra amount of feed and labor that plaintiff expended in caring for his cattle while waiting to ship them. The defendant also objects that the court further erred in refusing its fourth instruction which declared that although the defendant refused to ship plaintiff's cattle on July 9, 1894, yet before the defendant could be held liable for cost of feeding and depreciation in market value, the plaintiff was required to again offer the cattle for shipment within a reasonable time after he learned that defendant was again receiving cattle for shipment, and plaintiff did not have the right to hold the cattle for twenty days after defendant was again receiving cattle for shipment and recover cost of feeding and depreciation in market value between the tenth and thirty-first of July.

Recurring to the evidence we there find that the plaintiff on the evening of the ninth of July drove his cattle from his pasture six miles away to Lexington station for shipment under the agreement; that when the cattle arrived at the station plaintiff was for the first time notified that defendant would not receive them. There was neither feed or water provided by defendant at its stock pens. The defendant could give no assurance when it could or would receive and ship plaintiff's cattle. There was nothing left for plaintiff

*[margin note:]* ——: failure to carry in time: measure of damages; duty to mitigate.

to do, under these conditions, but to drive his cattle back to the pasture from whence they came. It is true that two days afterward the defendant notified the plaintiff that it could receive and ship his cattle. It was in effect conceded that the driving of the plaintiff's cattle, as already stated, caused a shrinkage of one hundred pounds per head, and that between the time they were so driven and the subsequent shipment, they had, through plaintiff's exertion, been made to regain fifty pounds of the lost weight. The evidence further disclosed that the plaintiff's cattle brought $4.15 per hundredweight but if they had been shipped two days after the day named in the agreement they would have only brought $4.10 per hundredweight. But if the cattle had been so shipped it is plain that the plaintiff's damages would have been much enhanced thereby. The cattle had already lost one hundred pounds in weight and while in this condition to have subjected them to another drive before recovering from the effects of the former one would have, of course, occasioned a much greater shrinkage in weight. Had they, in that condition, been offered in the market it is obvious that the weight would not only have been much less but also the price per hundredweight. They would necessarily not have brought as high a price in that plight as they did in that in which they were sold.

It was the legal duty of the plaintiff to make every reasonable exertion to render the injury that had been occasioned by the defendant's breach of the agreement as light as possible. If he failed to perform this duty the damages thereby suffered would not have been recoverable. The labor and expense which its performance involved was chargeable to the defendant who was liable for the injury so mitigated and this on the principle that if the efforts made are successful the defendant gets the benefit of them and if abortive it is but just that the

attending expense be borne by him.    1 Sutherland on Dam., sec. 88; Douglass v. Stephens, 18 Mo. 363; Waters v. Brown, 44 Mo. 302; Fisher v. Goebel, 40 Mo. 475; Haysler v. Owen, 61 Mo. 270; Harrison v. Railway, 88 Mo. 625.    It follows from these considerations that the trial court did not err in its action either in the giving of the plaintiff's instruction or in refusing that requested by defendant.

The other objections of the defendant are fully answered by what was said in Wilson & Aull's case, previously cited.

Perceiving no error in the record materially affecting the merits it follows that the judgment must be affirmed.    All concur.