W. S. VIVION et al., Respondents, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, June 2, 1913.**

1. **CARRIER: Written Contract: Verbal Contract: Exemption.** Though a written contract with a carrier of freight which exempts the latter from liability for a prior verbal contract and from damages for breach of the verbal contract, will deprive the shipper of an action on the verbal contract, yet such exemption in the written contract will not include a prior verbal contract which has been terminated by the parties by an absolute refusal of performance by the carrier and an abandonment of the shipment by the shipper.    Cases distinguished.

2. ————: ————: ————: **Absolute Contract: Act of God.** Where a carrier verbally agrees absolutely, without qualification, to ship certain cattle on a certain day, an act of God will not excuse performance.    To have that effect the exemption must be made in the contract.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*T. A. Boulware* and *Scarritt, Scarritt, Jones & Miller* for appellant.

(1) The court should have sustained the peremptory instruction offered at the close of plaintiff's evidence in chief and at the close of all the evidence. Gann v. Railroad, 65 Mo. App. 65.    (2) The court erred in excluding evidence. Fountain v. Railroad, 114 Mo. App. 676.

*Chas. M. Hay* and *H. N. Eversole* for respondents.

(1) The trial court correctly overruled defendant's peremptory instructions.    Whether or not plain-

tiffs proved their verbal contract which is alleged in the petition, was an issue of fact, and it was properly submitted to the jury under the evidence and instructions. Miller v. Railroad, 62 Mo. App. 260. (2) The trial court properly excluded the evidence offered by defendant. Davis v. Smith, 15 Mo. 467; White v. Railroad, 19 Mo. App. 400; Miller v. Railroad, 62 Mo. App. 252; Shelby v. Railroad, 77 Mo. App. 208.

ELLISON, P. J.—Plaintiff's action is for damages following an alleged breach of a verbal contract to ship three carloads of cattle from Auxvasse to Chicago, Illinois, whereby the cattle lost in weight. The judgment in the trial court was for plaintiffs.

The verdict being for plaintiffs we must accept the evidence in their behalf and all reasonable inferences therefrom as true. It appears that plaintiffs, through their employee, asked defendant's agent at its shipping station for the cars on the 8th of July, 1909, telling him they wanted to ship July 10th; and the agent answered he would get them if he could and that he would let plaintiffs know. On the morning of the 10th the agent telephoned plaintiffs: "I have got the cars; come ahead." Plaintiffs went to the yards immediately and bedded the cars for the shipment. They then drove in their cattle from their farm, put them in the pens at the station and were then informed by the agent that they could not be shipped, and there the matter ended, they being compelled to drive them back. They were large, heavy, fat cattle and the day was hot and sultry. In consequence they scoured, got "off their feed," and lost flesh. Two days afterwards plaintiffs again made application for shipment and the cattle were taken and transported under a written contract.

Defendant offered evidence tending to show that there had been unprecedented floods which washed

out portions of its tracks and it was thereby disabled
to comply with its verbal contract by such act of God.
This offer was refused by the trial court, and we think
rightly. The contract was absolute, containing no
exception, or proviso of excuse for an intervening act
of God. In such case an act of God will not excuse
performance. [Davis v. Smith, 15 Mo. 467; Harrison
v. Railway Co., 74 Mo. 364; White v. Railway Co.,
19 Mo. App. 400; Miller v. Railway Co., 62 Mo. App.
252; Shelby v. Railway Co., 77 Mo. App. 205.]

The remarks of the court criticising an instruc-
tion, in Edwards v. Lee, 147 Mo. App. 38, 47, were
made in a case involving a contract which did not con-
tain an absolute stipulation as to delivery, though of
course that must have been a part of the written con-
tract, either express or implied. The bill of lading
is stated to have been omitted from the record, but we
assume from the instruction set out on page 44 and
criticised on page 47, that the words "being prevented
only by the act of God or the common enemy," were
regarded as words contained in the bill of lading by
way of a saving clause for the carrier. We think the
case not applicable here. The words of the learned
judge we think show that was an exception made in
the bill of lading.

Then defendant offered the written contract en-
tered into afterwards on the 12th. This contract re-
cited that an agent had no authority to make verbal
contracts and also contained a release in the following
words: "Twelfth. Said second party hereby re-
leases and waives any and all causes of action or
claims for damage that may have accrued to him by
reason of any written or verbal representation made
to him prior to the execution hereof, and further agrees
that all such prior representations and agreements
are hereby merged into this contract."

We are of the opinion that this writing was prop-
erly excluded. The waiver quoted did not embrace,

and could not embrace without some valid consideration, an entirely different transaction which had been brought to an end by the action of the parties and the damages thereon had already accrued before the execution. The written contract concerned an original engagement and had nothing to do with a prior, independent contract which had been brought to an end by the parties. If this release clause relates to the contract breached and brought to an end several days before, why could it not be applied to a contract several months before?

We think the cases of Hoover v. Railroad, 113 Mo. App. 688, and Fountain v. Wabash Railroad Co., 114 Mo. App. 676, cited by defendant, are not applicable. The former concerned one transaction. The verbal agreement was to ship on the first train whereby the cattle would get to the early market at Kansas City for that day. They were shipped on the second train that day and did not get to the early market. The written contract executed in such circumstances containing the waiver clause, of course, referred to the failure to take the cattle out on the first train. In the latter case, though five days elapsed, there was but the one transaction. The cattle were kept waiting for the shipment verbally agreed upon but delayed. Besides, the release or waiver clause in the contract in that case was different from that contained in this contract. In that case the release was specifically from any cause of action by reason of any *prior verbal contract*. While in the present case, as we have seen, the contract came to an end and had become a closed incident; and the release was not of any cause of action accruing on a prior verbal contract, but was a release of any cause of action or damage arising on any *verbal representation* made prior to the writing; clearly meaning any representations made concerning the shipment in which the writing was executed. And so does the reason of the matter con-

fine the claim to "such prior representations and agreements" merging in the contract. We think it manifest that the waiver clause quoted was not in= tended by the parties to embrace a distinct and com- pleted matter entirely foreign to it. We think the facts of this case entirely distinguish it from the cases cited. We have not referred in this connection to Gann v. Railroad, 72 Mo. App. 34, and Miller v. Rail- road, 62 Mo. App. 252, as those cases had not the ex- emption as to damages which is in this case.

After consideration of all the suggestions made by defendant, we think the judgment should be af- firmed. All concur.