## W. H. SUMMERS, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 4, 1904, and November 6, 1905.

1. **COMMON CARRIERS: Interstate Commerce Act: Evidence: Limiting Liability: Reduced Rate.** A common carrier, under the interstate commerce act, must file with the commission its schedule of rates between interstate points, and the certificate of the secretary of the commission is the best evidence of that fact; and where the jury finds that the only rate filed with the commission is the one charged in the contract on trial, there is no consideration for the limitation of the carrier's liability.

2. ———: **Claim for Loss: Affidavit: Waiver: Jury.** Where the agent of the carrier makes no objection to a claim of loss but proceeds to negotiate for a settlement, the affidavit of the claimant required by the contract is waived or is a question for the jury, and their finding thereon is conclusive.

3. ———: **Petition: Defense: Contract.** Where a plaintiff's petition counts on a failure to deliver in a reasonable time and the defense sets up a contract which is void, such contract can not be considered in determining other questions in the case.

4. ———: **Owner: Agent.** Persons shipping cattle in their own name at the instance and direction of the owner are his agents and he may maintain a suit in his own name for injury thereto.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler*, Judge.

AFFIRMED.

*Geo. S. Grover* for appellant.

(1) Under the undisputed facts in evidence the plaintiff was not entitled to recover. Kellerman v. Railroad, 136 Mo. 178; Durenick v. Railroad, 57 Mo.

App. 556; Wyrick v. Railroad, 74 Mo. App. 406; Bowring v. Railroad, 77 Mo. App. 250; s. c., 90 Mo. App. 324; Vaughn v. Railroad, 78 Mo. App. 639; Witting v. Railroad, 101 Mo. 640. The plaintiff was not entitled to recover in this action, any damages whatever in behalf of either J. H. Summers or W. H. McCormack, who are not parties to this action. R. S. 1899, sec. 540. (2) The court gave erroneous instructions, at plaintiff's request, as well as of its own motion. Authorities cited supra; Galbreath v. Carnes, 91 Mo. App. 512; Holwerson v. Railroad, 157 Mo. 244. (3) There is an "irreconcilable conflict" between the instructions given at the request of plaintiff and those given by the court below of its own motion, so that it is impossible to tell which guide the jury followed. In any event, they were certainly confused and misled. Quirk v. Elevator Co., 126 Mo. 295; White v. Ins. Co., 93 Mo. App. 282.

*Fred Lamb* for respondent.

(1) As common carrier it was the duty of defendant to deliver the stock at its destination within a reasonable time. Levering v. Ins. Co., 42 Mo. 95; Reed v. Railroad, 60 Mo. 206; Rice v. Railroad, 63 Mo. 314; Davis v. Railroad, 89 Mo. 349-50; Witting v. Railroad, 101 Mo. 640; Ginn v. Railroad, 20 Mo. App. 461; Doan v. Railroad, 38 Mo. App. 413 and 414; Vaughan v. Railroad, 78 Mo. App. 641-3-4; Davis v. Railroad, 89 Mo. 349; Milling Co. v. Transit Co., 122 Mo. 276. (2) This was an interstate shipment and must be governed by the provisions of the interstate commerce law. By the provisions of this law the defendant is required to file with said commission its schedule of rates applicable to shipments of this kind between the points in question. And the parties, whether carrier or shipper, are held to have contracted with reference to these rates regardless of any provision that may have been inserted in the contract by the parties for "the rates of interstate ship-

ments are not the subject of contract, but are in effect, fixed under the law." Gerber v. Railroad, 63 Mo. App. 148; Wyrack v. Railroad, 74 Mo. App. 417; Ward v. Railroad, 158 Mo. 226; Sec. 6, Interstate Commerce Law, R. S. U. S. 1901, p. 3156. (3) We submit that under the law the waiver of the affidavit was as full and complete as it could have been, and the defendant will not be permitted to take advantage of it after receiving the claim and negotiating with the plaintiff for a settlement. The question was submitted to the jury under a proper instruction and the defendant is bound by that finding. Hamilton v. Railroad, 80 Mo. App. 597; Hess v. Railroad, 40 Mo. App. 202; Hamed v. Railroad, — Mo. App. 482; Richardson v. Railroad, 62 Mo. App. 1.

BROADDUS, P. J.—The plaintiff Summers on the 5th day of August, 1902, delivered to defendant at Huntsville, Missouri, for shipment to Chicago, Illinois, nine carloads of cattle containing 173 head, and one carload of hogs containing 63 head. Two of the cattle were owned by other persons. The shipment was consigned to Murray & McDowell, commission merchants at Chicago, and were by them sold on August 7 on the market. Some of the contracts for shipment were signed by plaintiff and others were signed by W. H. McCormack and J. H. Summers, the respective owners of the two head of cattle not owned by plaintiff. It was shown that the defendant's agents knew the facts in regard to the ownership of the cattle. There was evidence that the train transporting the cattle was delayed en route and that they did not arrive at their destination at the Chicago stockyards until 2 o'clock and 30 minutes p. m. on the 6th of August when by schedule and ordinary time for such shipments they should have arrived on the morning of that day and in time for that day's market; that they arrived too late for the market of August 6 and consequently had to be kept until the market of the next day; that in the meantime the market value of the cattle had

declined twenty-five cents and the hogs ten cents on the hundred pounds; that in consequence of the non-arrival of the shipment in time for the market of August 6, plaintiff was compelled to purchase feed and water for his stock and that there was a greater shrinkage in the weight of the animals than there would have been but for the delay in transit. The rates agreed upon between the parties were nineteen and one-half cents per hundred pounds for the cattle and twenty cents for the hogs. The contracts for shipment of the different lots of stock were in the following form, that for the hogs only different from that of the cattle in the rate and value, viz.: "To the Wabash Railroad Company: The undersigned offers for shipment over your railroad fifty-one head of cattle from Huntsville to Chicago (each) of the estimated weight of 1,500 pounds and valued at $50 per head, and subject to the rules and regulations and of the schedule of valuation and weights printed on the back hereof, such valuation being named by me for the purpose of securing a reduced rate of freight; and in case of loss or injury to said livestock the liability of the carrier or carriers shall not exceed the above amount per head." There was a provision in the contract that, "In consideration of the rate aforesaid it is further agreed that no claim for damages which may accrue to the party of the second part under this contract shall be allowed or paid by the party of the first part, or sued for in any court by the party of the second part, unless a claim for such loss or damages shall be made in writing, verified by affidavit of the party of the second part, or his or their agent and delivered to the general freight agent of the party of the first part in his office in the city of St. Louis within ten days from the time said stock is removed from the cars." And it was also further provided that in consideration of said reduced rate that in the event of any unnecessary delay or detention of the stock while en route, plaintiff agreed to accept as full compensation for all loss or damages sustained in

consequence of such delay the actual amount expended by the plaintiff in the purchase of food and water for the cattle and hogs. It was in evidence that plaintiff's claim for his loss occasioned by the delay was filed with defendant's general freight agent at his office within the required time, but it was not supported by plaintiff's affidavit; yet, it was further shown that said agent made no objection to it for that omission and that thereafter he negotiated both verbally and in writing with plaintiff with a view of adjusting his claim. Evidence was also introduced to show the amount expended by plaintiff for feed and water rendered necessary.

It was agreed that the shipment in question was subject to the interstate commerce law. The certificate of the secretary of the interstate commerce commission was introduced showing that defendant's rate of shipment between Huntsville, Missouri, and Chicago, Illinois, as filed with the commission, was nineteen and one-half cents for cattle and twenty cents per hundred pounds for hogs, corresponding with the rates in the contracts in suit. There was introduced as evidence, or, at least, it is attached to the bill of exceptions, a paper purporting to contain what is designated as the joint freight tariff between defendant and the Chicago, Rock Island and Pacific Railway Company, which shows that the defendant had other and higher rates for the shipment of cattle and hogs between Huntsville and Chicago; but these rates are not referred to in the said certificate of the interstate commerce commission. It was shown what was realized by the sale of the stock on the market; and that the delay of the train containing plaintiff's cattle was caused by the derailment of another train preceding it. The plaintiff sought to recover for the loss occasioned by the delay aforesaid, viz.: the decline in the price of cattle and hogs in the market, the loss in shrinkage, and the expense of feed and water.

The pleading of the defense was a general denial; special pleas that plaintiff had failed to file with its

general freight agent his claim for loss; the agreement aforesaid that for all loss occasioned by delay plaintiff was only entitled to recover, if at all, for the expense of feed and water for his stock; and that in consideration of said reduced rate defendant was only liable for the sum of $50 on each head of cattle and $10 on each head of hogs; that plaintiff realized more than $50 per head on his cattle, and more than $10 per head on his hogs.

The case was tried before a jury which returned a verdict for plaintiff for $1,084.98.

It is contended by defendant that the contract for shipment being one for reduced rates, there is a sufficient consideration for the special provisions it contains limiting defendant's liability as a common carrier. It is to be admitted that unless the contract was in fact for reduced rates notwithstanding the recitations in the contract itself to that effect there was no limitation of defendant's common-law liability.

Under the interstate commerce act the defendant was required to file with the commission its schedule of rates for shipments between the points in question. The certificate of the secretary of the commission shows but one rate in the schedule on file with said commission and that the one inserted in the contract of shipment in this case. It is true defendant had a schedule of other and higher rates, but there is nothing to show that it was filed with the commission. As we understand the interstate commerce act of Congress it became the duty of the defendant to file with the commission its schedule of rates. The certificate of the secretary of the commission does not show that the schedule of rates offered in evidence by defendant had been so filed. And the statement of the witness that it was on file is not the best evidence of that fact. However, the question as to whether it was on file was submitted to the jury by an appropriate instruction, and as the finding was against defendant it is concluded thereby. Such being the fact, the conclusion necessarily follows that the contract was

not for a reduced rate. Therefore, the limitation of valuation of the cattle and hogs and the liability of defendant for the damages accruing to plaintiff by reason of their delay and delivery in Chicago was without consideration. [Ward v. Railroad, 158 Mo. 227; Kellerman v. Railroad, 136 Mo. 178.]

The failure of the plaintiff to make affidavit to his claim of loss filed with defendant's general freight agent under the circumstances was evidently waived because the agent made no objections to it for that reason, and entered into negotiations for settlement with the plaintiff. [Hamilton v. Railroad, 80 Mo. App. 597; 101 Live Stock Co. v. Railroad, 100 Mo. App. 674.] It was a question that was submitted to the jury by an instruction and they found against defendant, which is conclusive.

Defendant also contends that the plaintiff was not entitled to recover under the pleadings and evidence for damages claimed to the stock shipped in the name of J. H. Summers and W. H. McCormack. The petition alleges "That the freight on all of said cars (cars shipped in the names of the other persons mentioned) was paid to the defendant and received by it from this plaintiff; that the interest of said J. H. Summers and W. H. McCormack in the cattle and hogs shipped in their names was only that of attendants, and to avoid multiplicity of suits and parties, their interest and claim arising out of the delayed shipment herein alleged have been, for value, assigned to this plaintiff. There was no evidence of such assignment.

It is proper to state that plaintiff's action is not founded upon the written contract mentioned. They were set up by defendant as a defense. Plaintiff's action is based upon defendant's common-law liability as a common carrier for its failure, having received the stock, to deliver it within a reasonable time. In determining the question, therefore, we must leave out of con-

sideration said contracts because they are held to be void. [Ward v. Railroad, 158 Mo. 226.]

The question then is, whether the fact that plaintiff caused some of his stock to be shipped in the name of the two persons mentioned precludes him from the right to recover in this action? There is no dispute but that all the stock except two head of cattle belonged to plaintiff. These persons in shipping the stock in their own names at the instance and direction of plaintiff were acting as his agents. An agency may be implied from the acts of the principal. [Sharp v. Knox, 48 Mo. App. 169; Cummings v. Hurd, 49 Mo. App. 139.] And, "every action shall be prosecuted in the name of the real party in interest." [Sec. 540, Code of Civil Procedure.] Also, "a contract between parties, if made upon a valid consideration, may be enforced by a third person, though he is not named in the contract when the obligee owes to such third person some duty, legal or equitable, which would give him a just claim." [Devers v. Howard, 144 Mo. 671.]

There are some objections to the admission of alleged incompetent evidence given on behalf of plaintiff but we do not think they are well founded. In view of the conclusion reached it is unnecessary to notice the specific objections made to certain instructions given on behalf of plaintiff or the errors complained of on account of the refusal of the court to give certain other instructions for the defendant as the action of the court thereon is in harmony with the views herein expressed.

The cause is affirmed. All concur.