R. M. FOUNTAIN et al., Respondents, v. THE WA-BASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 6, 1905.

1. COMMON CARRIERS: Verbal Agreement: Subsequent Writing: Damages: Release. A verbal agreement by a shipper with a station agent to supply cars for the shipment of cattle at a given time is a contract, and if violated, damages may be recovered, unless they have been released.

2. ——: ——: ——: ——: ——. And a subsequent written contract for the shipment of the cattle will not prevent an action on the verbal one, unless there is an express waiver therein of the cause of action accrued on the verbal contract.

3. ——: ——: ——: ——: Consideration. In order that such subsequent written contract should in fact release the action on the prior verbal agreement there must be a consideration, and where the consideration recited is a reduced rate and there is in fact no such reduced rate, the cause of action still subsists.

4. ——: Damages: Value: Evidence. A witness's opinion of the market value of a commodity is expert evidence and is only advisory; and if a witness is versed in the trade and his information comes through general avenues to which the average business man resorts to guide his sales and purchases by, he is qualified to testify and the jury shall determine the weight of his evidence.

5. ——: ——: ——: ——: Telegram: Journals. But such witness may not give the contents of telegrams and trade journals, since they are not expressions of his opinions, and a telegram from a dealer is not competent, nor would trade journals be competent without extrinsic evidence showing their reports were based upon reliable sources.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED AND REMANDED.

*Geo. S. Grover* and *N. T. Gentry* for appellant.

(1)   The evidence was not sufficient to establish that a contract was entered into between the plaintiffs and defendant's agent. Gann v. Railroad, 65 Mo. App. 670.   (2)   The trial court committed error in permitting two of the plaintiffs, Mr. Greene and Mr. Fountain, to testify to the contents of a telegram that they received from the Drumm Commission Company, to the effect that the price of cattle had gone down fifteen cents.   Nothing short of a deposition, or evidence in open court, of someone connected with said business could be admitted to prove the matters contained in such a statement.   Hoskins v. Railroad, 19 Mo. App. 315; Hess v. Railroad, 40 Mo. App. 202; Kent v. Miltenberger, 50 Mo. App. 480.   (3)   Error was also committed by the trial court in permitting the plaintiffs, Mr. Booth and Mr. Bartee, to testify that the price of cattle in Chicago and St. Louis was lower on the thirteenth day of October than it was on the sixth day of October. These gentlemen frankly admitted that all that they knew about the price of cattle in Chicago and St. Louis was what different commission men told them and what they learned from the newspapers.   O'Neil v. Crain, 67 Mo. 251; Fogue v. Burgess, 71 Mo. 389; Cable v. McDaniel, 33 Mo. 363; 1 Greenl. on Evid. (Red Ed.), sec. 124; Railroad v. Johnson, 42 Ala. 242; McKelvey on Evid., sec. 141.   (4)   Error was also committed in permitting one of the plaintiffs, Mr. Green, to testify to the difference in the price of cattle in Chicago on October 12 and 13.   This witness admitted that he was not in Chicago or St. Louis on either day, but that he got his information from the Chicago Drover's Journal and the Live Stock Reporter.   (4)   The trial court committed error in refusing to admit in evidence the written contract (the Wabash live stock contract) when it was offered in evidence by defendant.   This was clearly a waiver of any claim that plaintiffs had against the defendant, and

was based on a good, valid consideration, to-wit: The execution of a written contract and the obtaining of a special or reduced rate of shipment. Gann v. Railroad, 72 Mo. App. 38; Miller v. Railroad, 62 Mo. App. 259; Helm v. Railroad, 98 Mo. App. 423.

*Thos. S. Carter* and *Gillespy & Conley* for respondents.

(1)   The evidence is amply sufficient to establish a contract to furnish the cars. Gann v. Railroad, 65 Mo. App. 670; Gann v. Railroad, 72 Mo. App. 34. Verbal contracts for the shipment of live stock have been upheld in many instances in this State and in other jurisdictions. Harrison v. Railroad, 74 Mo. 364; Miller v. Railroad, 62 Mo. App. 252; Gann v. Railroad, 72 Mo. App. 34. (2)   Defendant complains of the admission of the evidence offered by plaintiffs as to the decline in the price of cattle. To hold that the business world cannot learn, and does not know, fluctuations in the price of almost every known commodity on the face of the earth by the market reports in the newspapers, and market journals and by telegraph and telephone, is to strike down the sources of all business knowledge. Railroad v. Patterson, 24 S. W. 349; Railroad v. Perkins, 17 Mich. 296; Railroad v. Daggett (Tex. Civ. App.) 27 S. W. 186; Railroad v. Pasture Co., 23 S. W. 754; Railroad v. Donovan, 86 Tex. 378; Fairley v. Smith, 87 N. C. 367, 42 Am. Rep. 522; to same effect is 70 U. S. (3 Wall.) 114. (3) The alleged contract offered by defendant was rightfully excluded. Gann v. Railroad, 72 Mo. App. l. c. 38 and 39; Harrison v. Railroad, 74 Mo. 364; Miller v. Railroad, 62 Mo. App. 252; McCullough v. Railroad, 34 Mo. App. 23.

JOHNSON, J.—This action was brought before a justice of the peace to recover damages resulting from the breach of a verbal contract alleged to have been made by the parties, by which defendant undertook and agreed

to furnish plaintiffs four stock cars at a certain time and place for the shipment of seventy-seven head of cattle to market. On appeal, the case was tried in the circuit court resulting in a judgment in favor of plaintiffs, from which defendant appealed. Facts appearing in evidence are as follows:

Plaintiffs, who are stock shippers living near Sturgeon, applied to defendant's agent at that point for four cars in which to ship the cattle from Sturgeon to St. Louis. After some delay, the agent agreed to have the cars at the stock pens on a certain day in time for the shipment to go forward in a certain train and directed plaintiffs to have their cattle in the pens so that they could be loaded into the cars before the arrival of this train. Following this direction, plaintiffs drove their cattle in from the country and placed them in the pens as directed, but the promised cars failed to arrive, and were not received until after the lapse of five days from the appointed time. In the meantime, plaintiffs were compelled, in order to properly feed and care for the cattle, to remove them from the railroad pens to feed lots. Expense was incurred for feed and attention; the cattle suffered a loss in weight and the market declined. When the cars arrived, plaintiffs changed the destination of the shipment from St. Louis to Chicago and entered into a written contract with defendant for their transportation to the stockyards in the latter city, where they were delivered by defendant and sold on the market by plaintiffs.

One of the errors assigned by defendant is the refusal of the trial court to admit in evidence the written contract providing for the carriage of the cattle to Chicago. This contract was signed by both parties and, under its terms, defendant received the cattle for transportation to the destination named "at the rate of eighteen and one-half cents per cwt., which is a reduced rate expressly agreed upon between the parties hereto, and, in consideration of which rate, the party of the sec-

ond part (plaintiffs) stipulates and agrees as follows: . . . Eighth, . . . and in consideration of said rate herein named, the shipper hereby releases and waives any and all cause or causes of action that may have accrued to him by reason of any written or verbal contract prior to the execution of this contract." Defendant, in its answer, pleaded this condition as a waiver of the cause of action sued upon and tendered the issue that the rate provided was, in fact, a reduced rate and therefore a sufficient consideration for the waiver. We are of the opinion that the verbal agreement made by the parties constituted a contract, which imposed a duty upon defendant to furnish the cars as agreed, and that in consequence of a breach of that duty defendant became liable to plaintiffs for the damages thereby sustained. We agree with plaintiffs that the liability thus incurred had matured at the time the written contract was made, but it does not follow, as plaintiffs seem to think, that the accrument of their cause of action in any manner prevented its release in a subsequent contract made between the parties. The authorities cited by plaintiffs go no further than to hold that a verbal contract, such as the one before us, upon which a cause of action has accrued, does not merge into a subsequent written contract made by the parties *in the absence of a stipulation providing for the release of the damages.* [Gann v. Railroad, 72 Mo. App. 34; Harrison v. Railroad, 74 Mo. 364; Miller v. Railroad, 62 Mo. App. 252.] In a case recently decided by this court (Hoover v. Railroad, 113 Mo. App. 688), ELLISON, J., aptly stated the rule applicable: "If damages have accrued under a verbal contract and there is no waiver or disclaimer of such breach in the subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing. But, if the subsequent agreement contains among its stipulations that any breach of the verbal contract relating to the shipments is waived, thereby evincing an intention on the part of

the contracting parties to regard the writing as covering the whole shipment and determining their rights arising by reason of such shipment, no action can be maintained on the verbal agreement."

Reaffirming and applying the doctrine of that case, we must hold that the learned judge erred in refusing the evidence offered. The contract should have been admitted and the issue raised by defendant's averment that the rate given was, in fact, a reduced rate, then opened for proof.

The contract expressly based the agreement of plaintiffs to release the accrued damages upon the consideration of a reduced rate and, if in fact no reduction was made, there was no consideration for the agreement and it should not be enforced against the plaintiffs. It is not required of us to go into the subject of the validity of an agreement of this character, that appears to be without any consideration to support it, nor to look for other considerations than the one provided. It must be assumed that plaintiffs were actuated by the representation believed by them that they were receiving a reduced rate, without which they would not have released their accrued claim. The parties themselves incorporated in their contract a statement of the thing that moved plaintiffs to consent to a release, and, if it was, in fact, non-existent, the minds of the parties failed to meet and the stipulation must fall because of the lack of an actual agreement behind it. [Summers v. Railroad, 79 S. W. 481, 114 Mo. App. 452.]

Defendant further complains of the admission by the court of incompetent evidence relating to the market value of the cattle. The testimony on this subject elicited by plaintiffs was given by experienced stockmen, whose business it was to keep themselves informed of the fluctuations in the market value of cattle. Their information aside from that derived from their own transactions at the centers of trade was obtained from reading daily market reports published in trade journals and

newspapers and from conversations and correspondence . with commission dealers and others interested in the live stock business. The statement by a witness of the market value of a commodity falls in the class of opinion evidence and, as such, is advisory only. [Tate v. Railroad, 64 Mo. 149; Stevens v. Springer, 23 Mo. App. 375; Missouri, etc., v. Ellison, 30 Mo. App. 68; Railroad v. Norcross, 137 Mo. 415.] When it appears that the witness is experienced in the business of dealing in the commodity in question, the fact that his opinion is in part influenced by the reading of market reports published in trade journals and newspapers or by communications received from other dealers, does not disqualify him as . a witness. These are means of information usually sought and frequently acted upon by business men. The rule is pertinently stated in Railroad v. Norcross, supra, in this language: "If through the general avenues of information to which the average business man resorts to inform himself of values for the proper conduct of his business and to guide his sales and purchases of the character of property in controversy, the witness has derived his information, he is qualified to testify and it is then for the jury, in view of the manner of the acquisition of the information, to say what consideration will be given his estimate."

In this view of the question, we must hold that the witnesses were qualified to testify concerning the market value of the cattle at the times stated. [McCrary v. Railroad, 109 Mo. App. 567.] But the learned trial judge went too far in permitting one witness to state the contents of a telegram received by him from a commission dealer, which purported to give information on the subject of market value and in allowing another to state the values published by certain trade journals in their market reports. These statements were not the expression of the opinion of the witness, but related to facts communicated to him by others, and therefore were incompetent, not only for the reason that they were not

the best evidence of the contents of the telegram and market reports, but were hearsay because defendant had no opportunity to confront and cross-examine the persons who vouched for the accuracy of the information. Had the telegram itself been produced and offered in evidence, it should not have been admitted over the objection of defendant, no matter how well qualified its author may have been to express an accurate opinion, nor should the trade journals, had they been offered, been admitted without a showing by extrinsic evidence that their market reports were based upon reliable sources of information. [Wharton on Evidence (3 Ed.), sec. 674; Abbott's Trial Evidence (2 Ed.), 383; Farrly v. Smith, 87 N. C. 367, and cases cited.] Other points are made by defendant, but the errors committed are sufficiently disposed of in the views expressed.

The judgment is reversed and the cause remanded. All concur.