THOMAS FICKLIN, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 8, and February 5, 1906.

1. COMMON CARRIERS: Contract: Reduced Rate: Consideration. A common carrier with the shipper's assent fairly obtained may, upon a sufficient consideration, restrict its common law liability to damages.

2. ———: ———: ———: ———: Deceit. The carrier cannot make an unlawful assault upon the rights of the shipper without vitiating his contract; and the reality of the consideration expressed in the contract presumably procures the shipper's consent to part with his substantial common law rights, and a fictitious reduction will deprive the carrier of the fruits of his deception.

3. ———: ———: ———: ———: Classification. A contract is condemned because there was no rate for a non-release contract and the rate established and contracted for was not a reduced rate, and where for the purpose of shipment the carrier classifies cattle according to their value and so fixes the rate, the rate for cattle of a lower valuation cannot be compared with the rate for those of a higher valuation.

4. ———: Common Law: Interstate Commerce: Federal Courts. The common law as affecting interstate shipments by common carriers is distinctly recognized by the Federal Courts.

Appeal from Gentry Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*George S. Grover* for appellant.

(1) The demurrer to the evidence should have been sustained. Rice v. Railroad, 63 Mo. 314; Atchison v. Railroad, 80 Mo. 215; Gashweiler v. Railroad, 83 Mo. 112; Angell on Carriers (4 Ed.), sec. 225, p. 201, and cases cited; Milling Company v. Transit Company, 122 Mo. 276; Whitling v. Railroad, 101 Mo. 640; Kellerman v. Railroad, 136 Mo. 188-9; Cau v. Railroad, 194 U. S. 431; Chemical Co. v. Lackawanna Line, 78 Mo. App. 312; sec. 4386, R. S. U. S. 1901, vol. 3, pp. 2995-6. (2) At the close of the whole case the learned judge should have directed a verdict in favor of the defendant. Railroad v. Pearce, 192 U. S. 189; Hart v. Railroad, 112 U. S. 340; Kellerman v. Railroad, 136 Mo. 191; R. S. U. S. 1901, sec. 10, vol. 3, p. 3160; Wyrick v. Railroad, 74 Mo. App. 406. (3) The instructions given by the court at the request of plaintiff were erroneous. Chambers v. Railroad, 86 S. W. 501. (4) The instructions asked by defendant should have been given. Authorities cited, supra.

*Peery, Lyons & Wood* for respondent.

(1) That there was ample evidence upon which to submit to the jury the question of negligent delay in the transportation of the cattle, seems clear under the decisions of this and other appellate courts of the State. Douglass v. Railroad, 53 Mo. App. 473; Leonard v. Ry., 54 Mo. App. 294; Botts v. Ry., 106 Mo. App. 401; Sloop v. Ry., 84 S. W. 113, 93 Mo. App. 605; Blanchard v. Railroad, 60 Mo. App. 267; Hendrix v. Railroad, 107 Mo. App. 137; Smith v. Railroad, 87 S. W. 9 — Mo. App.—; Sash & Door Co. v. Railroad, 177 Mo. 641; Railroad v. McCann, 174 U. S. 580; Railroad v. Patterson, 169 U. S. 311; Marshall v. Railroad, 176 Mo. 480. (2) Before the special contract pleaded in the answer, or any of its terms or provisions, exempting the defendant from lia-

bility can be upheld, or given any efficacy or force, for any purpose, it must appear that it was based upon a sufficient consideration. There must have been in use by the defendant company for practical application release and non-release contracts; it is essential that the plaintiff by paying a higher rate could have obtained a contract of shipment which contained no clauses exempting the defendant from its common law liability, etc. Bowring v. Railroad, 90 Mo. App. 324; Paddock v. Railroad, 155 Mo. 524; Rice v. Railroad, 106 Mo. App. 371; Summers v. Railroad, 79 S. W. 481, 114 Mo. App. 452; Keyes-Marshall Co. v. Railroad, 87 S. W. 553, 113 Mo. App. 144. (3) No option was given the plaintiff between a release and non-release contract, but he was compelled to take the only sort of contract he could have obtained either as to rate, valuation or any other of its terms or conditions. There was absolutely no consideration for this contract, even if defendant had a right to make a special or reduced rate. There was no option offered to the plaintiff. 5 Am. and Eng. Enc. Law (2 Ed.), pp. 298, 299; Paddock v. Railroad, 155 Mo. 226; Duvenick v. Railroad, 57 Mo. App. 550; Powder Co. v. Railroad, 101 Mo. App. 442; Redman Ry. Carr., p. 75; Railroad v. Reynolds, 17 Kans. 251; Railroad v. Cravens, 57 Ark. 112; Railroad v. Lockwood, 17 Wall. (U. S.) 379; Railway v. Hale, 6 Mich. 258; Railway v. Gilbert, 88 Tenn. 430. (4) But aside from all this the defendant cannot claim exemption from liability on account of any provisions in these contracts, based upon an alleged reduced or special rate. This was an interstate shipment and the object and purpose of the interstate commerce act was to prevent special rates to shippers. A contract therefore, which recites a special or reduced rate, shows upon its face its illegality, and is void. This has been decided by both the Supreme Court and this court. Ward v. Railroad, 158 Mo. 226; Summers v. Railroad, 79 S. W. 481, 114 Mo. App. 452; Keyes-Marshall Co. v. Railroad, 87 S. W. 556, 113 Mo. App. 144.

JOHNSON, J.—Action for damages for negligent delay in the transportation of cattle to market. Plaintiff had judgment in the sum of five hundred dollars and defendant appealed. The shipment consisted of ninety-six head of fat cattle and was made under written contracts of affreightment providing for through transportation from Stanberry, Missouri, to the stockyards in Chicago, Illinois. It left the former place at noon one Saturday and, according to the evidence introduced by plaintiff, had it been forwarded with the usual expedition, would have reached the destination Sunday night in ample time for the best of Monday's market. The petition alleges, and there is substantial evidence supporting the charge, that the shipment was negligently and unreasonably delayed at various points to such an extent that delivery at the stockyards was not accomplished until about ten o'clock Monday morning. It required about an hour to put the cattle in the sale pens in shape for exhibition to buyers and, owing partly to the fact that the best of the market for that day was then over and partly because the cattle were worn out from lack of rest, food and water, plaintiff was compelled to sell them at a reduced price and suffered further damages from loss in weight resulting from the negligent treatment they received.

We will not go into details in this branch of the case, but will content ourselves with saying that plaintiff pleaded and supported by proof a common law cause of action and the judgment should be sustained provided we do not find that plaintiff bargained away his right to recover in the stipulations appearing in the shipping contract. Defendant contends that he did, but the trial court held otherwise and in the instructions given, in effect, eliminated all of these special agreements from the consideration of the jury. Every question worthy of note presented by defendant depends upon their assumed validity and our discussion will be limited to that subject.

The contract begins with an application signed by the shipper, in which it is stated that the cattle are "valued at $50.00 per head and subject to the rules and regulations of the company and of the schedule of valuations and weights . . . such valuations being named by me *for the purpose of securing a reduced rate of freight*: in case of loss or injury to said live stock the liability of the carrier or carriers shall not exceed the above amount per head." The contract then follows, in which it is provided "that the party of the first part (the carrier) and connecting lines will in consideration of the agreement herein contained forward for the second party . . . the following freight . . . from Stanberry, Missouri, to Chicago, the responsibility of each carrier to extend hereunder only to its own line. At the rate of 23 1-2 per cwt., *which is a reduced rate* expressly agreed upon between the parties hereto and in consideration of which rate the party of the second part stipulates and agrees as follows." Then follow twelve stipulations, each of which either contains some limitation of the carrier's common law liability or imposes some duty upon the shipper. It will be noticed that all of these special agreements, every one of which is for the benefit of the carrier, rest upon the expressed consideration of a reduced freight rate to the shipper. The employment of the term "reduced rate" presupposes the existence of a higher regular rate available to the shipper for the carriage of the same class of property under a contract that leaves unimpaired the carrier's common law liability and certainly does not mean a lower rate than that provided for the transportation of some other class of property.

That the carrier may, with the assent of the shipper fairly obtained and upon a sufficient and lawful consideration restrict the common law liability to damages resulting from negligence is well settled both by the decisions of the courts of this State and those of the United States [Kellerman v. Railroad, 136 Mo. 177; Paddock v.

117 App—15

Railroad, 155 Mo. 524; Sloop v. Railroad, 93 Mo. App. 605, 84 S. W., 111; Wyrick v. Railway Co., 74 Mo. App. 406; Hart v. Railroad, 112 U. S. 331; Cau v. Railway, 194 U. S. 427.] As we are dealing with an interstate shipment, we specially notice here the opinion in the case of Cau v. Railway, supra, much relied upon by defendant, in which the rule followed by the Supreme Court of the United States is very clearly expressed in this excerpt:

"It is well settled that the carrier may limit his common law liability [York Co. v. Central Railroad, 3 Wall. 107.] But it is urged that the contract must be upon a consideration other than the mere transportation of the property and an 'option and opportunity must be given the shipper to select under which, the common law or limited liability, he will ship his goods.' If this means that a carrier must take no advantage of the shipper or practice no deceit upon him, we agree. If it means that the alternative must be *actually* presented to the shipper by the carrier, we cannot agree. From the standpoint of the law, the relation between carrier and shipper is simple. Primarily, the carrier's responsibility is that expressed in the common law and the shipper may insist upon the responsibility. But he may consent to a limitation of it and this is the 'option and opportunity,' which is offered to him. What other can be necessary? There can be no limitation of liability without the assent of the shipper and there can be no stipulation for any exemption by a carrier, which is not just and reasonable in the eye of the law. Inside of that limitation, the carrier may modify his responsibility by special contract with the shipper." Stated in another form, the principles embodied in this statement of the law are these. The shipper has the right, of which he cannot be deprived except by his own voluntary consent, to have his property carried without any limitation of the liability imposed by the common law upon the carrier. Notwithstanding the carrier is not required to offer the

choice between a release and non-release contract, such choice must be left open to the shipper. The shipper is often at the mercy of the carrier. He must get his merchandise to market and is in no position to delay shipment awaiting the result of efforts to enforce his rights. When the carrier, in effect, says to him, "Sign this contract releasing us from liability or your shipment will not be received," an unlawful assault is made upon the rights of the shipper and a contract so extorted will not be sustained.

Further, the assent of the shipper must rest upon an actual and lawful consideration. As observed in the Cau case, "the carrier must take no advantage of the shipper or practice no deceit upon him." Presumably, it is the reality of the consideration expressed that procures the consent of the shipper to part with substantial rights. By holding out the bait of a fictitious reduced rate to bring within its retractile reach special privileges and benefits, the carrier under the most elemental principles will not be permitted to enjoy the fruits of such deception. We have not overlooked the holding in the Cau case that the transportation of the goods was a sufficient consideration to support the agreement to limit the carrier's liability, but that question is not before us, for here the release is expressly based upon the fact of a reduced rate and the contract must stand upon that consideration alone. [Fountain v. Railroad, 114 Mo. App. 676; Summers v. Railroad, 114 Mo. App. 452, 79 S. W. 481.]

Turning now to the facts before us, it is admitted by the witnesses for defendant that upon cattle of the value of $50 per head and under, there is but one rate from Stanberry to Chicago, 23 1-2 cents per hundred pounds. On cattle valued from $50 to $100 per head, the rate is twenty-five per cent higher and so on, as the value increases, the rate is correspondingly increased. There is but one form of contract—that before us, and a shipper cannot ship cattle of any value except under

that form. The contract must be condemned for two reasons: First, because no rate is provided for shipment under a non-release contract and therefore no option is available to the shipper; and second, the established rate is not, in any sense, a reduced rate, but is the regular and only rate, and consequently there is an entire failure of the expressed consideration. We have sufficiently considered the first ground. As to the second, defendant contends that the rate must be treated as a reduced rate because it is lower than that applying to cattle of higher value. This position is illogical. Defendant, for purposes of revenue, has divided this species of property into different classes and it would be just as reasonable to make comparisons between the rate on cattle of the class before us and that on pianos and, because the former is lower than the latter, to call it a reduced rate, as it is to make comparisons between different classes of the same species of property. Defendant must abide by its own classification. The rate upon a steer valued at $100 is as immaterial to a shipper, who desires to ship one valued at $50, as is the rate upon a prize bull. The different classes bear no relation to each other in the sense urged by defendant.

The contention that the common law is not followed by the Federal courts except in cases controlled by State laws and that as this case falls within the purview of the interstate commerce law, the common law should not be followed, requires no further notice than the statement that the common law as affecting interstate shipments is distinctly recognized in the Cau case.

Under the views expressed, it follows that the special provisions of the contract invoked by defendant must be ignored and the rights of the parties determined under the rules of the common law. Judged by this standard, the case was fairly tried and submitted, and the judgment is affirmed. All concur.