BRANDOM & WOOLWINE, Appellants, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, December 7, 1908.

1. COMMON CARRIERS: Owner of Railroad: Burden of Proof: Time Tables. Where in an action by a shipper for damage to the shipment the ownership of the railroad is denied by the defendant, the burden is on the shipper to show such ownership; and where all the substantial evidence shows that the branch road was under the sole control of another corporation that collected and expended all its moneys, there is failure to sustain such burden and the effect of certain folders, time tables and maps is insufficient to overcome the defect.

2. ——: ——: ——: ——: Evidence. Certain tables and atlases not published and emitted by the defendant, but by certain publishing houses, are held inadmissible as hearsay and such publications cannot be admitted without showing by extrinsic evidence that they are compiled from authentic and reliable sources.

3. ———: ———: ———: **Cash Receipt.** A receipt for cash fare shown to have been issued by defendant on said branch road is under the evidence held to be without importance.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Bruce Barnett, Lozier, Morris* and *Atwood* and *Paul R. Stinson* for appellants.

(1)   The court erred in giving the instruction in the nature of a demurrer upon the first count at the close of all the evidence.   There was evidence upon which to submit this count to the jury.   (2)   The plaintiffs had the right to have their case submitted to the jury upon both counts, the counts not being repugnant and stating the same cause of action upon different but consistent theories.   Rinard v. Railroad, 164 Mo. 284; Landers v. Railroad, 114 Mo. App. 660; Maguire v. Transit Co., 103 Mo. App. 459.   (3)   This error was most prejudicial because defendant's evidence as to diligence would have been no defense upon the first count.

*Thomas R. Morrow, James P. Gilmore* and *Virgil Conkling* for respondent.

(1)   The demurrer to the first count, founded upon alleged breach of contract, was propery sustained.   (2) Defendant, a corporation of the State of Kansas, was sued because of alleged breach of contract.   The evidence conclusively proved two things:   *First.*   That no contract was ever made with any company.   *Second.*   That the negotiations relied upon to establish a contract were had with the station agent of a different company, a corporation of the State of Texas.

JOHNSON, J.—Plaintiffs, partners engaged in the cattle business, brought this suit against defendant, a common carrier, to recover damages alleged to have been

sustained by them in consequence of the delay of defendant to provide cars for the shipment of 371 head of cattle from Higgins, Texas, to Kansas City, Missouri. In the first count of the petition, the cause pleaded is the breach of a contract to furnish the cars on a certain day. In the second, a failure to perform the common law duty to provide the cars within a reasonable time after they were ordered by plaintiff, is alleged. In its answer, defendant denies that it operates a railroad into Higgins, Texas, and states that the carrier that received the shipment at that point and whose duty it was to furnish the cars to plaintiffs was a connecting but independent carrier. Further, it is alleged that defendant made every reasonable exertion to assist that carrier to procure the cars and that the cars were provided within a reasonable time. It is denied that any agreement was made to furnish them at a specified time.

It appears from the evidence that in September, 1903, plaintiffs purchased 371 head of neat cattle on a ranch near Higgins. Desiring to ship the cattle to the market at Kansas City, they went, on September 7th, to the station of the only railroad in Higgins, and asked the agent to procure the necessary cars and have them at the station on the 12th inst. The agent said, in effect, that he would place the order at once and expressed the belief that the cars would be furnished at the time requested. He acted promptly in transmitting the order to his superior officer but the cars did not arrive at Higgins until September 19th. Relying on the belief that the cars would be on hand at the time for which they were ordered, plaintiffs received the cattle at the ranch of their vendors and proceeded to drive them to Higgins. Before reaching that place, they learned that the cars had not arrived and would not arrive in the near future. They were compelled to turn the cattle into a pasture near Higgins and there keep them until the cars came. In consequence of being kept in a strange pasture for a time so long, the cattle lost flesh and deteriorated in

quality.   During the week of the delay, the market at
Kansas City declined and plaintiffs' damages consist of
loss in weight and depreciation in market value.   The
cattle left Higgins on the 19th of September, arrived at
Kansas City on the 21st of that month and were sold on
the market immediately thereafter.   At the close of the
evidence, the court instructed the jury to return a ver-
dict for defendant on the first count.   As to the cause of
action pleaded in the second count, the main issues of
fact submitted to the jury in the instructions given were
the questions of whether defendant was operating the
railroad that received the shipment and whether rea-
sonable diligence was exercised in providing the cars.
The jury found for the defendant on these issues and the
cause is here on the appeal of plaintiffs who earnestly
contend that they were prejudiced before the jury by a
number of errors committed by the trial court in the
course of the trial.

Since we find from a careful examination of the
record that the court erred in not instructing the jury
peremptorily to return a verdict on the second as well
as on the first count of the petition, it is unnecessary to
discuss most of the questions argued with much ability
by counsel.   We entertain the opinion that the evidence
shows indisputably that defendant neither owned nor
operated the railroad in Texas, and, consequently, owed
plaintiffs no duty either contractual or under the com-
mon law to provide them with cars.   It appears from the
evidence introduced by defendant that from the north
boundary of Texas southwest to Amarillo, the railroad
which runs through Higgins is owned and operated by
the Southern Kansas Railway of Texas, a corporation
chartered by the State of Texas, and having its principal
office in Amarillo.   It is true this line is a part of what is
known as the "Santa Fe" system, and is advertised and
operated as a link in the "Panhandle" line of that sys-
tem.   The roads operated by defendant also belong to
that system, but the two companies are separate cor-

porations and keep their business entirely separate. Trains running over the Texas Line are under the sole control of the Texas management; the revenue and operating expenses of that line are collected and expended by the Texas company. Separate books and records are kept and the two companies appear to be as independent of each other as any connecting carriers engaged in joint traffic well could be. The written contract made by plaintiffs for the shipment of their cattle was with the Southern Kansas Railway of Texas not with defendant company, and the cars did not come under the control of defendant until they reached Woodward, Oklahoma, the first division station north of Higgins. These facts are made to appear, not only by the testimony of the officers and agents of the Texas company, but by record evidence as well. Some of the latter evidence should not have been admitted, for the reason that it was not properly authenticated and identified, but after rejecting all such evidence from our consideration, enough remains in the record to establish beyond controversy the existence of the facts we have stated. We think the evidence introduced by plaintiffs was not of sufficient probative strength to put any of these facts in issue. The burden of proof was on the plaintiffs to show that defendant was operating the railroad at Higgins. Had defendant not contested the existence of the fact, meager proof of it would have sufficed. [Oyler v. Railroad, 113 Mo. App. 375.] But with the fact disputed both in the pleadings and evidence, it devolved on plaintiffs to adduce competent evidence of its existence of sufficient evidentiary strength to raise a debatable issue. Plaintiffs introduced in evidence folders and time tables issued by defendant. These folders contained maps of the "Santa Fe" system which portrayed the Panhandle line as a part of that system. So it was, but that fact did not even tend to prove that all parts of the system belonged to one proprietor, or were under one management. The time table showed affirmatively that the stations in Texas between

the Oklahoma line and Amarillo were on the line of the Southern Kansas Railway of Texas. This could have been inserted for no other purpose than to advise the public that the Texas line was owned or operated by a different company from that which operated the road from the Texas line to Kansas City. Instead of contradicting the evidence of defendant, these folders strongly support it.

Further, plaintiffs introduced in evidence time tables and atlases not published and emitted by defendant, but by certain publishing houses. They showed that Higgins was a station on one of defendant's lines. We reject them as evidence on the ground that plaintiffs offered no competent evidence of their authenticity. Certainly, it would be an unjust rule that would hold defendant responsible for what some independent publisher might choose to say about its railroad and business. Plaintiffs should have shown by something better than mere hearsay evidence that the matter appearing in these publications was furnished by defendant or was collected under circumstances to give it the stamp of being authentic and reliable. The rule applicable to the admission in evidence of market reports in newspapers and trade journals should be applied to evidence of the character under consideration. Newspapers and trade journals are not admissible "without a showing by extrinsic evidence that their market reports were based upon reliable sources of information." [Fountain v. Railway, 114 Mo. App. 676, and cases cited.]

One of the plaintiffs testified that on one occasion when he rode on a passenger train from Higgins to Amarillo, he paid his fare to the conductor who gave him a receipt which purported on its face to be issued by defendant. The receipt was introduced, but it does not show the stations that were the termini of the trip and there are some circumstances in the record which indicate that the witness might be mistaken in his statement. But conceding that he is right about it, this one circum-

stance is not enough to raise a reasonable inference that the Texas line was being operated by defendant. Passenger trains were run through from Newton, Kansas, to the end of the Texas road. The train crew that took charge of such trains at Woodward, Oklahoma, a division point, remained in charge to the end of that division at Amarillo. The expense of the operation of the trains in Oklahoma was borne by defendant, the expense in Texas by the Southern Railway of Texas. Higgins is the first station south of the Oklahoma line and it would have been a very natural mistake for a conductor to forget to discard defendant's receipt book immediately on crossing the Texas line. It is not shown that it was the practice of the conductors to use defendant's receipts in Texas, or that such use was authorized. We do not feel justified in attaching any importance to an act that, doubtless, was a mere mistake or, if not, was clearly unauthorized.

It follows from what we have said that plaintiffs must be held to have failed to sustain their burden of proof to show that defendant was operating the road at Higgins and, therefore, became charged with the performance of a duty to furnish plaintiffs with cars. Because of this failure of proof, the action must fail.

The judgment is affirmed. All concur.